641 So.2d 410 (1994)
In the Interest of T.M. and F.M., Children.
No. 82291.
Supreme Court of Florida.
September 1, 1994.
Richard D. Ogburn, Panama City, for petitioner.
Thomas D. Koch, Sr. Atty. of Dept. of Health and Rehabilitative Services, Tallahassee, for respondent.
HARDING, Justice.
We have for review In re T.M., 622 So.2d 589 (Fla. 1st DCA 1993), based upon express and direct conflict with In re K.C., 603 So.2d 98 (Fla. 2d DCA 1992). We have jurisdiction pursuant to article V, section 3(b)(3) of the Florida Constitution, and approve the decision below.
This case involves an appeal from a final order terminating the father's parental rights to his minor children, T.M. and F.M. The natural mother voluntarily surrendered her parental rights and is not involved in this appeal.
In September 1986, the Department of Health and Rehabilitative Services (HRS) filed a petition alleging that the children were dependent. In October 1986, the trial court issued an order placing the children under HRS protective supervision in the parents' home under certain conditions. In March 1988, the trial court terminated the protective supervision, based upon a petition filed by HRS. In October 1988, HRS filed another petition alleging that the children were dependent, that the father had physically abused F.M., and that both parents were chronically abusive to the children. In November 1988, the trial court entered another order placing F.M. under HRS protective supervision in the parents' home. In October 1989, the trial court again released F.M. from protective supervision, based upon a petition filed by HRS. HRS filed another dependency petition in June 1990 and an amended dependency petition in August *411 1990. In February 1991, the trial court found the children to be dependent, placed them in the temporary care of HRS in foster care, established visitation rights for the parents, and ordered the parents to successfully complete intensive family counseling.
At an April 22, 1991, hearing on a proposed permanent placement plan as to the father, the trial court withheld acceptance of the plan until the father was released from prison. HRS filed a termination of parental rights (TPR) petition in May 1992; an adjudicatory hearing was held in August and September 1992; and the court entered an order terminating parental rights on September 22, 1992. The father remained in custody at the Hardee Correctional Institute throughout these proceedings.
At the adjudicatory hearing on the TPR petition, the father moved for judgment on the pleadings and for a directed verdict. The father argued that because no permanent placement plan or performance agreement had been approved as to the February 1991 order noncompliance could not be proven as required under section 39.467(3)(d), Florida Statutes (Supp. 1990). The trial court denied both motions and entered an order terminating the father's parental rights. On appeal, the First District Court of Appeal affirmed the trial court's order, based upon its determination that a performance agreement or permanent placement plan is not a prerequisite to termination of parental rights under sections 39.464(3) and (4), Florida Statutes (Supp. 1990). 622 So.2d at 590.
Section 39.464 allows for a petition for the termination of parental rights without a current performance agreement or permanent placement plan under the following circumstances:
(3) SEVERE OR CONTINUING ABUSE OR NEGLECT.  The parent or parents have engaged in conduct towards the child or towards other children that demonstrates that the continuing involvement of the parent or parents in the parent-child relationship threatens the life or well-being of the child regardless of the provision of services. Provision of services is evidenced by having had services provided through a previous performance agreement, permanent placement plan, or offer of services in the nature of a case plan from a child welfare agency. A current performance agreement or permanent placement plan need not be offered to the parent or parents, and the petition may be filed at any time before a performance agreement or permanent plan has been accepted by the court.
(4) EGREGIOUS ABUSE.  The parent or parents have engaged in egregious conduct that endangers the life, health, or safety of the child or sibling, or the parents have had the opportunity and capability to prevent egregious conduct that threatened the life, health, or safety of the child or sibling and have knowingly failed to do so. A performance agreement or permanent placement plan need not be offered to the parent or parents, and the petition may be filed at any time before a performance agreement or permanent placement plan has been accepted by the court.
The father argues that section 39.464, paragraphs (3) and (4) conflict with section 39.467, which specifies the procedures for adjudicatory hearings dealing with the termination of parental rights. The relevant provisions of section 39.467 provide the following:
(3) The determination of the court regarding termination of parental rights shall be based upon its finding that the following is proven by clear and convincing evidence:
... .
(d)1. A performance agreement or permanent placement plan as defined in s. 39.01 has been offered to a parent; or
2. Any of the elements of s. 39.464 is met; and
(e) The parent who is offered a performance agreement or permanent placement plan has failed to substantially comply with the agreement or plan. This failure to substantially comply is evidence of abuse, abandonment, or neglect, unless the court finds that the failure to comply with the performance agreement is due to the lack of financial resources of the parent or parents *412 or due to the failure of the department to make reasonable efforts to reunify the family.
The father notes that section 39.464, paragraphs (3) and (4) do not require the offering of a performance agreement or permanent placement plan prior to the termination of parental rights. The father argues that under section 39.467(3)(e) a performance agreement or placement plan is a necessity prior to the termination of parental rights and that this requirement is in direct conflict with section 39.464. Based upon this alleged conflict of provisions within the same statute, he argues that under State v. City of Hialeah, 109 So.2d 368 (Fla. 1959), the provision that is last in order of arrangement, section 39.467, should prevail over section 39.464, since neither of the provisions is last in time.
However, we find no conflict between sections 39.464 and 39.467. Section 39.467(3) provides that a court's determination regarding the termination of parental rights must be based upon its finding that a number of elements have been proven by clear and convincing evidence. Subparagraph (3)(d) requires proof that either a performance agreement or permanent placement plan has been offered to the parent or that any of the elements of section 39.464 have been met. Thus, paragraph (d) can be satisfied without offering a performance agreement and, if one is not offered, then paragraph (e) is inapplicable.
Clearly, the legislative intent behind section 39.467(3)(e) was to require proof of a failure to comply with a plan or agreement only in those cases where the offering of a plan or agreement is mandated under section 39.464. Only section 39.464(5) mandates that such an offer must be made.[1] Thus, section 39.467, subparagraphs (3)(d)2. and (3)(e), recognize that in cases of "abuse, neglect, or abandonment" section 39.464(5) requires the offering of a plan or agreement. In such cases, it would be fair to terminate parental rights only if it was proven that the parent failed to comply with a plan or agreement that had been offered.
There is no indication that the legislature intended, via section 39.467, to require a plan or agreement in the extraordinary circumstances outlined in sections 39.464(3) and (4). To construe the statute as doing so would directly conflict with the language chosen by the legislature to indicate that such a plan or agreement is not required in those circumstances. As this Court held in State v. Putnam County Development Authority, 249 So.2d 6, 10 (Fla. 1971), "[i]t is our duty to read the several provisions of the Act as consistent with one another rather than in conflict, if there is any reasonable basis for consistency." See also Woodgate Dev. Corp. v. Hamilton Inv. Trust, 351 So.2d 14 (Fla. 1977); State ex rel. School Board v. Department of Educ., 317 So.2d 68 (Fla. 1975). There is a "reasonable basis for consistency" between sections 39.464 and 39.467. Section 39.467 does not require a plan or agreement in instances where section 39.464 does not. Rather, section 39.467 recognizes that in some circumstances section 39.464 requires the offering of a plan or agreement prior to terminating parental rights. Sections 39.464 and 39.467 would only be inconsistent if under section 39.464 a plan or agreement was never required to be offered.
The father also contends that to allow his parental rights to be terminated without a plan or agreement would violate his constitutional rights as described by this Court in Padgett v. Department of Health & Rehabilitative Services, 577 So.2d 565 (Fla. 1991). The father cites the following language used by this Court:

*413 We note that because parental rights constitute a fundamental liberty interest, the state must establish in each case that termination of those rights is the least restrictive means of protecting the child from serious harm. This means that HRS ordinarily must show that it has made a good faith effort to rehabilitate the parent and reunite the family, such as through a current performance agreement or other such plan for the present child.
Id. at 571.
The father incorrectly interprets this language as a ruling by the Court that a performance agreement or permanent placement plan is the least restrictive means of protecting children in all instances. It is not. As we said in Padgett, "ordinarily" such tools are the least restrictive means. However, in such extraordinary circumstances as are described in section 39.464, paragraphs (3) and (4), the termination of parental rights without the use of plans or agreements is the least restrictive means. Only by the use of such measures will this Court be able to adhere to the "`overriding principle that it is the ultimate welfare or best interest of the child which must prevail.'" Id. at 570 (quoting In re Camm, 294 So.2d 318, 320 (Fla.), cert. denied, 419 U.S. 866, 95 S.Ct. 121, 42 L.Ed.2d 103 (1974)).
Accordingly, we approve the decision below. We disapprove the opinion in In re K.C., inasmuch as it always requires proof of a failure to comply with a performance agreement or permanent placement plan prior to terminating parental rights under section 39.464(3).
It is so ordered.
GRIMES, C.J., OVERTON, SHAW and KOGAN, JJ., and McDONALD, Senior Justice, concur.
NOTES
[1] Section 39.464(5), Florida Statutes (Supp. 1990), provides the following:

The department, the guardian ad litem, or a licensed child-placing agency may petition for the termination of parental rights under any of the following circumstances:
... .
(5) ABUSE, NEGLECT, OR ABANDONMENT.  After a performance agreement or permanent placement plan has been accepted by the parent or parents, the child is abused, neglected, or abandoned for 6 months or more. The failure of the parent or parents to substantially comply with the performance agreement or permanent placement plan constitutes evidence of abuse, neglect, or abandonment under this subsection unless the failure was due to the lack of financial resources of the parent or parents or the failure of the department to make reasonable efforts to reunify the family.