920 So.2d 847 (2006)
M.S., the Mother, Appellant,
v.
DEPARTMENT OF CHILDREN AND FAMILIES, Appellee.
No. 4D05-3588.
District Court of Appeal of Florida, Fourth District.
February 22, 2006.
*849 Domenic Landolina of Domenic Landolina, P.A., Stuart, for appellant.
Pilar Harris, Fort Pierce, for appellee.
BAILEY, JENNIFER D., Associate Judge.
This appeal arises from the termination of M.S.'s parental rights to her son, A.S. The issue before us is whether the record reflects clear and convincing evidence to support the Department of Children and Families' ("the Department") petition and the trial court's decision to terminate parental rights. Concluding that the record reflects insufficient evidence to support termination as the least restrictive means of protecting this child, we reverse.
In this case, the Department sought to terminate M.S.'s parental rights asserting that M.S. suffers from a mental health disorder previously diagnosed as schizoaffective disorder and that she has a history of failing to comply with recommended mental health treatments, which placed A.S. at risk. The petition also alleged that M.S. had a nomadic lifestyle and did not have the ability to support and meet the needs of A.S. The Department alleged that M.S. had refused counseling, and that her parental rights as to her older son, E.L., were previously terminated. The Department's petition relied upon this prior termination to prove in this case that the mother refused to avail herself of services pursuant to section 39.806(1)(i), Florida Statutes (2001).[1] The petition alleged certain erratic behaviors in support of the assertion that M.S. was mentally ill.[2]
The petition does not allege that A.S. was ever abused or even actually neglected. There is no claim that the mother suffers from drug or alcohol problems. The Department removed A.S. from his mother's custody when he was under a year old, during the E.L. proceedings. M.S. faithfully visited A.S. until the Department unilaterally suspended visitation some eleven months prior to the termination hearing. There was no explanation of the suspension in the record. Further, the undisputed evidence reflected that the mother had attended every court hearing regarding A.S. and had always appeared well-groomed.
In order to prevail in termination proceedings, the Department must prove "by clear and convincing evidence that reunification with the parent poses a substantial risk of significant harm to the child ... [and] establish in each case that termination of those rights is the least restrictive means of protecting the child from serious harm." Padgett v. Dep't of Health & Rehabilitative Servs., 577 So.2d 565, 571 (Fla.1991). This evidentiary burden remains in place even where there has been a prior termination of parental rights as to a sibling. Fla. Dep't of Children & Families v. F.L., 880 So.2d 602 (Fla.2004).
No case plan or services were ever offered to M.S. in this case. The Department relied on the prior termination as to E.L. to serve as evidence of the mother's refusal of services. However, the *850 termination order in the record belies the Department's position. The E.L. order reflects that the mother was in full compliance with her case plan, had cooperated with mental health assessment and counseling, and that the department had recommended full reunification of M.S. with E.L., pending the assessment of A.S.'s father. That case fell apart because the man with whom she resided, A.S.'s father, refused to be assessed and then M.S. made the unfortunate decision to move to Virginia without the case being closed. Her subsequent lack of stability ultimately resulted in termination as to E.L., but not because she refused mental health services. The E.L. termination was based upon her lack of stability and inability to meet the child's material needs, not mental health issues.
The only testimony in this case of any attempt to secure or refer the mother to mental health services was that a caseworker had "begged" her to get services and she did not do so. There is no evidence that she refused or that she was ever actually referred. There is no record evidence that she actually suffers from mental illness. The record is devoid of any evidence of a mental health diagnosis by a mental health practitioner. The guardian ad litem in the case thought he had heard that she had been diagnosed with schizoaffective disorder but did not know by whom or when. The record indicated that perhaps that rumor was derived from a previous Baker Act proceeding in St. John's County. No records were provided from that event. No records from the mental health assessment in the E.L. case or from the counseling were provided in this case. While the Department cited odd events in its petition, it provided no competent testimony in support of any of its allegations of mental illness.[3]
As to the "nomadic lifestyle" issues, the record in this case reflects that although M.S. had changed jobs, she had a reasonable explanation for each job change. Two employers wrote letters supporting her to the court and one employer appeared to testify on her behalf. The evidence showed that M.S. has worked, except when she alleges she was injured, at the low-paying jobs to which her skill level entitled her. The unrebutted evidence is that except for times when she was injured, she has consistently worked, although she changed jobs. She has a rental apartment where she lived for eight months prior to the termination hearing. The guardian that testified in the case had no idea what her job was or what her apartment was like. There was no testimony that it was anything less than suitable and clean. She has consistently had a place to live, although she has moved. There is no evidence that her homes were unclean, unsafe, or unsuitable; in fact, case workers attested that they are clean and appropriate. The Department suggests that her purchase of clothing for the child evidences mental health issues, since she does not have custody. The more salient and competent point is that she has clothing for the child. There is no evidence that she cannot meet the child's basic needs in this record.
*851 The Department relies upon section 39.806(1)(i), Florida Statutes. In order to pursue termination under this statute, the Department must prove 1) previous termination of parental rights to a sibling; 2) termination is in the best interests of the minor child; 3) reunification poses a substantial risk of significant harm to the child; and 4) termination is the least restrictive means of protecting the child from serious harm. Padgett, 577 So.2d at 571.
As to A.S., the Department proved that M.S.'s parental rights as to his sibling, E.L., were previously terminated. That termination order finds that the mother had virtually completed her case plan. Nowhere does the order reflect any refusal of services. The order did not identify any mental health issues as the basis for termination. It specifically based the termination on the mother's instability in removing to Virginia and instability upon returning to Florida after a domestic violence incident with A.S.'s father compromised her attempt to live in Virginia. "[T]he circumstances leading to the prior involuntary termination will be highly relevant to the court's determination of whether the current child is at risk and whether termination is the least restrictive way to protect the child." F.L., 880 So.2d at 610. There must be some evidence that the condition which caused the original abuse or neglect makes probable the prospect of future abuse or neglect and the condition was one that was likely to recur. Dep't of Children & Families v. B.B., 824 So.2d 1000, 1006-07 (Fla. 5th DCA 2002); Padgett, supra. M.S.'s current stability in housing and the recommendations of employers suggest that the likelihood of recurrence is speculative. If, as the Department contended at trial, M.S.'s historical instability is due to mental health issues, surely the least restrictive means of protecting A.S. would be to offer M.S. a case plan because she previously almost successfully completed her plan in E.L.'s case and apparently complied with all mental health requirements at that time.
The Department failed to specify or provide evidence of the nature of the risk A.S. faces with his mother. There is no evidence in this record as to the nature of the potential significant harm to the child. There is simply an inadequate record to conclude that termination is the least restrictive means of protecting A.S. where the mother had substantially complied with a prior case plan, and no case plan and no specifics were offered in evidence as to A.S. Least restrictive means "requires that measures short of termination should be utilized if such measures can permit the safe re-establishment of the parent-child bond." Id. at 1009. While the Department certainly has arguments about M.S.'s lack of stability, the record lacks evidence. For these reasons, we reverse and remand for proceedings consistent with this opinion, including the provision of a case plan to M.S.[4]
Reversed and Remanded.
WARNER and KLEIN, JJ., concur.
NOTES
[1] 39.806 Grounds for termination of parental rights

(1) The department, the guardian ad litem, or any person who has knowledge of the facts alleged or who is informed of those facts and believes that they are true may petition for the termination of parental rights under any of the following circumstances:
. . .
(i) When the parental rights of the parent to a sibling have been terminated involuntarily.
[2] The Father's parental rights were also terminated. He has not appealed and that termination order stands.
[3] The Department's concerns may well prove to be justified once a full record is developed in that there are certain of M.S.'s behaviors which are suggestive of mental illness. The caseworkers recounted a history of abusive relationships, an arrest which resulted in dropped charges for calling 911, and that M.S. still sets out clothing for the two boys who have not been in her custody for years. However, to terminate, the Department must provide clear and convincing evidence, which is lacking in this case, especially since the prior termination order did not rely on the mother's failure to utilize mental health services.
[4] We note in the record a status report which reveals that A.S. was removed from his original foster placement shortly after the termination order, so we do not believe that offering services to the mother in support of a more stable lifestyle and mental health counseling will compromise his chance at a stable future.