SAWAYA, J.
 

 We review an order terminating the parental rights of the father, C.A.T., to his son, R.T. He seeks reversal of that order, contending that: (1) the abandonment statute, which was the basis for termination of his parental rights, is unconstitutionally vague; (2) termination of his parental rights is not the least restrictive means to protect R.T.; and (3) the trial court’s decision to terminate his rights based on abandonment is not supported by the record.
 

 The Department of Children and Families (DCF) initially filed a petition for termination of parental rights against both the father and the child’s mother, M.R. Apparently, the petition was filed on an expedited basis pursuant to section 39.806(3), Florida Statutes (2007), which permits a termination petition to be filed with an offer of a case plan with the goal of termination rather than reunification. The petition alleged that the father had abandoned R.T. The trial court eventually found that DCF had proven this allegation by clear and convincing evidence, which resulted in the order we now review. The mother’s rights were also terminated, and it is apparent from the record that her situation had been in a steady state of decline over an extended period of time due to drug abuse, mental health issues, and domestic violence with various paramours. She is not a party to these proceedings.
 

 As to the first issue, the father contends that the definition of “abandonment” contained in section 39.01, Florida Statutes (2007), which is cited in section 39.806(l)(b), Florida Statutes (2007), as a ground for termination of parental rights, is unconstitutionally vague. Because we have specifically rejected a similar vagueness challenge to the same statute in
 
 J.C.G. v. Department of Children & Families,
 
 780 So.2d 965, 967 (Fla. 5th DCA 2001) (“The father’s argument that section 39.01(1) of the Florida Statutes which defines ‘abandonment’ is unconstitutionally vague and overbroad is also rejected.”), we will address this issue no further.
 

 Proceeding to the second issue, it is readily apparent that resolution of that issue will render moot the third issue. Therefore, it will not be necessary to dwell upon all of the facts and circumstances that led to the trial court’s ultimate conclusion that the father abandoned the child. We believe that it will be sufficient to address the relevant facts as they relate to the issue regarding application of the least restrictive means test.
 

 
 *684
 
 The Florida Supreme Court has held that parental rights constitute a fundamental liberty interest.
 
 Padgett v. Dep’t of Health & Rehab. Servs.,
 
 577 So.2d 565, 570 (Fla.1991) (citing
 
 Santosky v. Kramer,
 
 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982)). Hence, in order to terminate parental rights, DCF must proceed in a narrowly tailored manner and prove, in addition to the statutory requirements for termination of parental rights under section 39.806(1), Florida Statutes (2007), that termination is the least restrictive means of protecting the child from serious harm.
 
 B.C. v. Fla. Dep’t of Children & Families,
 
 887 So.2d 1046, 1050 (Fla.2004) (requiring application of the least restrictive means test to termination proceedings pursuant to section 39.806(l)(d)l., which applies in instances where a parent has been incarcerated);
 
 Fla. Dep’t of Children & Families v. F.L.,
 
 880 So.2d 602 (Fla.2004);
 
 Padgett; L.D. v. Dep’t of Children & Family Servs.,
 
 957 So.2d 1203 (Fla. 3d DCA),
 
 revieio denied,
 
 967 So.2d 197 (Fla.2007);
 
 C.M. v. Dep’t of Children & Families,
 
 953 So.2d 547 (Fla. 1st DCA 2007);
 
 A.J. v. K.A.O.,
 
 951 So.2d 30 (Fla. 5th DCA 2007) (holding that the least restrictive means test applies in proceedings under chapters 39 and 63 of the Florida Statutes);
 
 D.P. v. Dep’t of Children & Family Servs.,
 
 930 So.2d 798, 801 (Fla. 3d DCA 2006);
 
 In re K.W.,
 
 891 So.2d 1068 (Fla. 2d DCA 2004);
 
 R.F. v. Dep’t of Children & Families,
 
 889 So.2d 945, 946 (Fla. 5th DCA 2004);
 
 Dep’t of Children & Families v. L.D.,
 
 840 So.2d 432 (Fla. 5th DCA 2003).
 

 This test requires, as the court in
 
 Pad-gett
 
 explained, “that [DCF] ordinarily must show that it has made a good faith effort to rehabilitate the parent and reunite the family, such as through a current performance agreement or other such plan for the present child.”
 
 Padgett,
 
 577 So.2d at 571.
 
 “Padgett
 
 describes the least restrictive means as those that offer the parent a case plan and time to comply with the plan so as to obtain reunification with the child.”
 
 In re K.W.,
 
 891 So.2d at 1070. “The clear purpose of the use of the least restrictive means [test] is the ‘reestablishment of the parent-child bond.’ ”
 
 Id.
 
 (quoting
 
 M.H. v. Dep’t of Children & Families,
 
 866 So.2d 220, 223 (Fla. 1st DCA 2004)).
 

 The father was not offered a case plan for reunification prior to initiation of the instant termination proceeding. The record reveals that a dependency petition was filed in 2002 shortly after R.T. was born and that the father consented to a case plan in that proceeding. That dependency case was subsequently closed when DCF reunited R.T. with the mother and, therefore, the father did not complete his case plan. Although the father was offered another case plan in 2006, he refused it, proceeded to hearing, and was found to be non-offending. That win cannot now be used against him. The trial court subsequently ordered the father to submit to a substance abuse evaluation and three consecutive drug screens, and during the termination hearing, the court referred to its order as a case plan. However, this was not a case plan for reunification of the father with R.T. The record further reveals that the father has not received DCF’s services since his participation in the original case plan in 2002, and he was never offered a case plan with services as an alternative to losing his parental rights in the current proceedings.
 

 We are aware that pursuant to section 39.806(3), Florida Statutes (2007), DCF may expedite a termination petition without offering the parent a case plan for reunification. However, in order to establish that termination is the least restrictive means, DCF must show that the parent will not benefit from court ordered ser
 
 *685
 
 vices.
 
 In re D.L.H.,
 
 990 So.2d 1267, 1273 (Fla. 2d DCA 2008) (“Because there was no evidence that the Father would not benefit from court-ordered services, the trial court erred in concluding that the termination of the Father’s parental rights was the least restrictive means of protecting D.L.H.”);
 
 M.S. v. Dep’t of Children & Families,
 
 920 So.2d 847, 851 (Fla. 4th DCA 2006) (concluding that the least restrictive means of protecting the child would be to offer the mother a case plan);
 
 C.B. v. Dep’t of Children & Families,
 
 874 So.2d 1246, 1252 (Fla. 4th DCA 2004) (“[Terminating the mother’s parental rights was not the least restrictive means of protecting the child and we reverse the order of the trial court so that a case plan, with a goal of reunification, can be established.”);
 
 see also J.J. v. Dep’t of Children & Families,
 
 994 So.2d 496, 503 (Fla. 4th DCA 2008). Here, DCF failed to prove that it could forego intermediate efforts at reunification. It did not establish that the father was not amenable to remedy his problems through actual, appropriate services, or that supervised visitation would be harmful to R.T. during the time the father worked to resolve his problems. Moreover, this is not a case of egregious abuse or danger to R.T.
 

 DCF alternatively argues that it can forego intermediate efforts at reunification because there has never been a parent-child bond between the father and R.T. This assertion is not supported by the record. Although the father and child never lived together, the father testified to the existence of a bond, and the Guardian Ad Litem (GAL) stated that although she has not observed the father and child together since 2006, when she saw them in 2006 there was a bond.
 

 Our careful review of this record leads us to conclude that DCF failed to prove by clear and convincing evidence that termination of the father’s parental rights is the least restrictive means of protecting R.T. from harm.
 
 See D.O. v. S.M.,
 
 981 So.2d 11 (Fla. 4th DCA 2007) (DCF must prove by clear and convincing evidence that termination is the least restrictive means to protect the child from harm),
 
 review denied,
 
 989 So.2d 1184 (Fla.2008);
 
 I.R. v. Dep’t of Children & Family Servs.,
 
 904 So.2d 583, 588 (Fla. 3d DCA 2005) (same);
 
 In re K.A.,
 
 880 So.2d 705, 709 (Fla. 2d DCA) (same),
 
 review denied,
 
 884 So.2d 22 (Fla.2004). Therefore, the trial court erred in entering the order under review.
 

 It is evident, as DCF and the GAL have clearly shown, that the father is not a model parent. We are not aware of a precise definition that tells us what a model parent is. Perhaps it is nothing more than a mythical figure, much like the reasonable person in tort law, that good parents should seek to emulate. Although it may be inescapable that many will assume that mothers and fathers may not be model parents if DCF has intervened in their lives to protect their child from harm, the law does not profess to require parental perfection. Indeed, the provisions contained in chapter 39 reveal an acute awareness that many parents, like the father in the instant case, are in need of assistance to achieve the necessary skills to simply be adequate parents who do not harm, neglect or abuse their children. Hence, “[t]he fundamental liberty interest of natural parents in the care, custody, and management of their child does not evaporate simply because they have not been model parents” and idealistic notions of parenthood do not comprise the standards that must be utilized in terminating parental rights to a child.
 
 Santosky,
 
 455 U.S. at 753, 102 S.Ct. 1388. The provisions of chapter 39 and the pertinent decisions rendered by the courts tell us what those standards are and we have applied them. Accordingly, we reverse the order of termination as to
 
 *686
 
 the father and remand this case for further proceedings.
 

 REVERSED and REMANDED.
 

 MONACO and COHEN, JJ., concur.