MONACO, C.J.
This is a consolidated appeal from an order terminating parental rights and a final judgment of termination with respect to R.L., the mother of two children[1]; and J.G., the father of one child, J.Y. We affirm without further comment the order and judgment terminating the parental rights of the mother, R.L. We reverse, however, with respect to J.G.
To terminate parental rights, the State must establish: (1) the existence of *922 one of the statutory grounds set forth in Chapter 39; (2) that termination is in the best interest of the child; and- (3) that termination is the least restrictive means of protecting the child from harm. See T.C. v. Dep’t of Children & Families, 961 So.2d 1060, 1061 (Fla. 4th DCA 2007). The evidence must be clear and convincing. See In re Adoption of Baby E.A.W., 658 So.2d 961, 967 (Fla.1995), cert. denied, 516 U.S. 1051, 116 S.Ct. 719, 133 L.Ed.2d 672 (1996). Clear and convincing evidence is defined as an “intermediate level of proof’ entailing both a qualitative and quantitative standard. It requires the evidence to be credible and the memories of the witnesses to be clear and without confusion. In addition, the total sum of the evidence must be of sufficient weight to convince the trier of fact “without hesitancy.” See N.L. v. Dep’t of Children & Family Servs., 843 So.2d 996, 999 (Fla. 1st DCA 2003). See also M.H. v. Dep’t of Children & Families, 866 So.2d 220 (Fla. 1st DCA 2004).
It appears from the record that the Department of Children and Families (“DCF”) had little knowledge of J.G., or of the facts that he was paying support and having contact with, J.Y., his child. From the time of the initial shelter proceeding DCF found as a general proposition that J.G. had abandoned J.Y., but it did so without sufficient information to back up that conclusion. The fact that J.G. was involved in overseas work or was suffering personal medical problems would not alone be a sufficient basis to support a finding of abandonment, especially in light of the fact that money for the support of J.Y. was frequently supplied by J.G., and that J.G. often visited the child. That is to say, reunification was never a goal for DCF as it related to J.G. It is quite doubtful, based on all the testimony, that DCF made a good faith effort to reunite J.Y. with his natural father. No case plan was ever offered to J.G. Indeed, it may not have been necessary for DCF to “reestablish” a parent-child bond since the evidence is that J.Y. seemed to react positively when his natural father visited during visitation periods.
C.A.T. v. Dep’t of Children & Families, 10 So.3d 682 (Fla. 5th DCA 2009), is instructive. In C.A.T., DCF initially filed a petition for termination of parental rights against both the father and the child’s mother. The petition was filed on an expedited basis pursuant to section 39.806(3), Florida Statutes. This court noted that the father was not offered a case plan for reunification prior to initiation of the termination proceeding. He was apparently never offered a case plan with services as an alternative to losing his parental rights in the proceedings below. We explained that while DCF could expedite a termination petition without offering the parent a case plan for reunification, DCF has to show when doing so that the parent will not benefit from court ordered services in order to establish that termination is the least restrictive means. See In re D.L.H., 990 So.2d 1267, 1273 (Fla. 2d DCA 2008). See also M.S. v. Dep’t of Children & Families, 920 So.2d 847, 851 (Fla. 4th DCA 2006) (finding that least restrictive means of protecting child would be to offer the mother a case plan); C.B. v. Dep’t of Children & Families, 874 So.2d 1246, 1252 (Fla. 4th DCA 2004) (order of the trial court reversed so that a case plan, with a goal of reunification could be established).
Just as in C.A.T., the evidence below fails to demonstrate that the father was not amenable to remedy any deficiencies through appropriate services or that supervised visitation would be harmful to J.Y. during the time the father worked to meet the case plan priorities. Similarly, in the instant case even though the father *923 and child only lived together for awhile (1999-2003), there seemed to be relatively constant visitation afterwards, and it is virtually uncontradicted that a recognizable parental bond exists between them. In short, it appears that the finding that termination of the father’s parental rights was the least restrictive means of protecting J.Y. from harm is not supported by substantial competent evidence in the record.
In addition, the lower court’s findings regarding the manifest best interest of J.Y. based on section 39.806(l)(b), Florida Statutes (2010), are likewise not supported by substantial competent evidence. We note parenthetically that while the court’s findings might well have been true with respect to K.N., the father of T.N., they simply did not apply to J.G.[2] We conclude in this regard, therefore, that the best interest determination was clearly erroneous as it was applied to J.Y.
Accordingly, we affirm the order and judgment terminating the parental rights of the mother, R.L., and reverse the order and judgment with respect to J.G., and remand for proceedings consistent with this opinion.
AFFIRMED in part, REVERSED in part, and REMANDED.
LAWSON and JACOBUS, JJ., concur.

. K.N. was the father of the second child, T.N. The appeal with respect to K.N. was earlier dismissed by this court.

. DCF concedes in its answer brief that they never claimed in their petition for termination that R.L., the mother, abandoned her two children. Rather it asserted only that grounds existed under section 39.806(l)(c), Florida Statutes for parental termination. We agree that the final judgment should be corrected to reflect this on remand.