ALTENBERND, Judge,
Concurring in part and specially concurring in part.
The court voted to consider this case en banc because recent trial court decisions on appeal in this court reflected differing views of this court’s use of the term “nexus” in termination cases involving two or more children. Examining our own cases we concluded that a new, comprehensive *990 opinion was “necessary to maintain uniformity” in our decisions. See Fla. R.App. P. 9.331(a). Although we do not recede from any case today, Chief Judge Silberman’s restatement of this court’s case law will undoubtedly help both the trial courts and this court to maintain uniformity in decisions. As the judge who first used the word “nexus” in K.A. to describe this test, I believe that the en banc opinion’s discussion of this issue is correct.
As we studied the cases involving “nexus,” we also came to realize that the trial courts appeared to be applying the concepts of “least restrictive means” and “manifest best interests” differently within them decisions. For example, the trial court in this case while struggling with the proper analysis of “nexus,” entered an order reciting that this unusual placement would be a “lesser restrictive alternative” “in the better interests of the children.” While attempting to write a better explanation of “least restrictive means,” I reached the conclusion that the district courts have misinterpreted the holding in Padgett v. Department of Health and Rehabilitative Services, 577 So.2d 565 (Fla.1991). I am inclined to believe that over time even the supreme court itself may have given a role to “least restrictive means” that was not intended by the court when it issued Padgett. Thus, I concur in the court’s opinion with the exception of the holding and discussion in section V concerning the application of the “least restrictive means” test.
In brief explanation, I conclude that “least restrictive means” is a test used by the judiciary to determine whether a statute that addresses a fundamental liberty interest is constitutional. It is supposed to be an evaluation of the legislature’s enactment; it was never intended to be an evaluation of the parties’ conduct or circumstances.
The proper question in Padgett, which perhaps was answered without a full explanation, was whether the relevant statute violated a parent’s fundamental liberty interest under the U.S. Constitution when it permitted the termination of the liberty interest; that is, the right to parent. Given that the state has a compelling interest in protecting children from abuse, neglect, and abandonment, the judiciary’s limited constitutional evaluation of such a statute addresses the question of whether the statute and the procedures used to implement it are the “least restrictive means” of interfering with the parent’s constitutional right while protecting the health and welfare of a child.
When we examine the procedures affecting such a fundamental liberty interest, our analysis is a type of procedural due process review. When we address the substantive provisions of such a statute, our analysis is a type of substantive due process review. In the context of parental rights, it appears to me that the courts have transitioned from a procedural due process review to a more controversial substantive due process review without fully recognizing that the transition has occurred.
I am convinced that the courts have misunderstood what the supreme court intended in Padgett when it required a consideration of the “least restrictive means.” In Padgett as it related to standard dependency and termination proceedings, I think the court was trying to explain that, so long as a parent received a meaningful opportunity, through a performance plan or case plan, to cure the issue or problem that made the parent unfit, the statute passed the least restrictive means test. The case-by-case analysis in that context required the trial court to examine factually whether the parent was given this opportunity. Although there may have been *991 a component of substantive due process in this holding, I believe the court was focusing primarily on whether the parent received procedural due process through the performance plan.
Instead of limiting the trial court’s role to this factual examination, the courts have extended Padgett to require a case-by-case substantive due process analysis of the constitutionality of some provisions in Chapter 39 as applied in each and every termination proceeding following a dependency proceeding. I doubt that is what the supreme court envisioned when it decided Padgett.
But this case is not a termination proceeding following a dependency. It is an expedited termination. I see no reason to extend the reach of the “least restrictive means” test, as an as-applied substantive due process analysis, to expedited proceedings. With all due respect to the majority’s reading of In re T.M., 641 So.2d 410 (Fla.1994), I do not conclude that the court was requiring such a case-by-case substantive due process review of the statute in each and every expedited termination proceeding. I read the holding in In re T.M. simply to approve the constitutionality of a statute authorizing expedited termination in a context like this case. The supreme court decided the legislature was within its authority to declare termination as a proper means of addressing the sort of extreme parenting problems that are the subject of this specific variety of expedited termination proceedings. The holding does not require a case-by case, as-applied analysis because, as a matter of law, so long as the grounds in the statute are proven by clear and convincing evidence, the statute is constitutional on its face. In other words, this holding is a facial determination that the statute is constitutional in the context of a substantive due process challenge.
There is little question that Padgett and In re T.M. could have given the district and circuit courts more explicit direction. I cannot argue that the majority’s interpretation of these cases is categorically incorrect. But to explain, as the court states today, that the substantive due process “least restrictive means” test is now “implicit” in our statutory scheme is little more than an admission that the judiciary, over time, has inserted an additional requirement of “least restrictive means” into the statute.
It is the job of the judiciary to evaluate a statute affecting a fundamental liberty interest to assure that the statute addresses a compelling state interest and that the legislature has selected a “least restrictive means” to address or remedy the problems that are of compelling state interest. If a specific statute is too broad, invokes a remedy prematurely, or requires a specific remedy that is more restrictive than necessary, normally we should hold the statute unconstitutional and send it back to the legislature for that body to narrow its own statute. If we can fairly construe the statute in a narrow manner, it may be appropriate to use a narrow construction to decide that the statute has withstood a constitutional challenge under strict scrutiny and thereby uphold the statute. But it simply was not the judiciary’s job to insert an additional element of “least restrictive means” into a statute.
Because the judiciary has not actually rewritten the statutes and has only inserted a vague concept of least restrictiveness into the mix, trial and appellate judges alike tend to have varying, personalized approaches to this decision-making process, many of which are not the equivalent of a substantive due process review of the statute as applied. “Least restrictive means” has become “least restrictive way” or “least restrictive method.” Without *992 statutes incorporating these concepts, this additional judicial element has become a factor that creeps into our evaluation of the child’s manifest best interests and of the “better” placement for a child. If we would only limit “least restrictive means” to its role as a judicial test of the constitutionality of the statute, a test to protect the parent’s liberty interest, it would less often become a test restricting our ability to do whatever is in the child’s manifest best interests after we have constitutionally terminated the rights of the parents.
The following sections of this special concurrence further explain the reasoning behind the preceding summary. I doubt that they provide a comprehensive analysis, but I hope the reader will find them useful.[5]
I. A Brief Review of Padgett and In re T.M.
In Padgett, the supreme court first described the least restrictive means test as an aspect of termination proceedings.[6] Although the case was both factually and procedurally complex, the narrowest issue in Padgett concerned the termination of parental rights of one child based on the earlier termination of rights to other children. 577 So.2d at 568. The supreme court held that the termination of rights as to other children could serve as grounds for the termination to the later-born child. The court addressed the constitutional implications of its holding:
As to whether the practice violates constitutional principles, this Court and others have recognized a longstanding and fundamental liberty interest of parents in determining the care and upbringing of their children free from the heavy hand of government paternalism. The United States Supreme Court has concluded that “freedom of personal choice in matters of family life is a fundamental liberty interest protected by the Fourteenth Amendment.” Santosky v. Kramer, 455 U.S. 745, 758, 102 S.Ct. 1388,1394, 71 L.Ed.2d 599 (1982).
Padgett, 577 So.2d at 570.
The court then briefly elaborated on the constitutional principles, stating:
We note that because parental rights constitute a fundamental liberty interest, the state must establish in each case that termination of those rights is the least restrictive means of protecting the child from serious harm. This means that HRS ordinarily must show that it has made a good faith effort to rehabilitate the parent and reunite the family, such as through a current peiformance agreement or other such plan for the present child.
Id. at 571 (emphasis added).
The supreme court did not fully explain its reasoning. I would argue that the court was explaining that, in the usual case in which a case plan is offered during a dependency proceeding, the statute is constitutional so long as the parents receive a meaningful opportunity to receive due process through a case plan. In that situation, termination is a proper means to *993 address the compelling state interest of protecting children from abuse if the parents fail at the case plan. The only case-by-case analysis required in that setting is a review to determine factually that the parents received a constitutionally adequate opportunity to fulfill a plan. I recognize that the requirement for a case plan is at least partially an issue of substantive law and not an issue that is purely procedural, but I am unconvinced that the court actually intended for each trial court to conduct a substantive due process analysis of the statute in each such case.
Padgett does not include any discussion of what might be required for the statute to pass constitutional muster when a termination is sought in an expedited fashion without a prior dependency proceeding. The supreme court later discussed that issue, albeit briefly, in In re T.M., 641 So.2d 410.
In In re T.M., the supreme court considered a case in which the family had been the subject of a dependency proceeding, but the State commenced a termination proceeding against the incarcerated father without giving him the opportunity to comply with a case plan. Based on Padgett, the father argued that for a termination to pass strict scrutiny, a case plan is essential because such a plan constitutes the least restrictive means of protecting the children in all instances. In re T.M., 641 So.2d at 413. The supreme court rejected this argument.
[I]n such extraordinary circumstances as are described in section 39.161, paragraphs (3) and (¾), the termination of parental rights without the use of plans or agreements is the least restrictive means. Only by the use of such measures will this Court be able to adhere to the “ ‘overriding principle that it is the ultimate welfare or best interest of the child which must prevail.’” [Padgett, 577 So.2d] at 570 (quoting In re Camm, 294 So.2d 318, 320 (Fla.), cert. denied, 419 U.S. 866, 95 S.Ct. 121, 42 L.Ed.2d 103 (1974)).
Id. (emphasis added).
Sections 39.464(3) and (4), Florida Statutes (Supp. 1990), as discussed in In re T.M., were the predecessors to the statutory grounds for termination involved in this case. I conclude that the supreme court rejected the necessity for an as-applied analysis in cases of such exceptional abuse.[7] The supreme court appears to hold that under such circumstances, only an elimination of parental rights can adequately protect the children; the parent’s intentional conduct eliminates the need for heightened, individualized consideration of his other liberty interest. In other words, the statute on its face passes the least restrictive means test. As long as the Department establishes this ground by clear and convincing evidence, there is no need to conduct a further case-by-case least restrictive means analysis as a matter of substantive due process. I recognize that this decision can be read merely *994 to reject a procedural due process attack on the statute authorizing expedited terminations because the statute eliminates the case plan as a procedure, but I read the case to hold that the statute is constitutional when challenged substantively.
II. Santosky and the Constitutional Law Preceding Padgett
To better understand the Florida Supreme Court’s brief discussion of least restrictive means in Padgett and In re T.M., it is helpful to examine the United States Supreme Court’s decision in Santosky v. Kramer, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982), as well as the case law from which the concept of least restrictive means arose. Like Padgett, Santosky was a termination of parental rights case. It addressed whether by statute or judicial rule a state was required to have a higher burden of proof in a parental termination proceeding. A sharply divided court held that clear and convincing evidence is the minimally accepted burden of proof.[8] Santosky, 455 U.S. at 747-48, 102 S.Ct. 1388.
The majority and dissenting opinions make clear that the justices believed they were resolving a procedural due process issue. Id. at 753-55, 774-75, 102 S.Ct. 1388. It also appears that they were mandating the higher burden of proof only for the fact-finding phase; that is, the termination phase of the hearing and not the dispositional phase. Id. at 748, 102 S.Ct. 1388. Although the Court recognized that the parents’ interest was a fundamental liberty interest, id. at 753, 102 S.Ct. 1388, the Court never discussed the issue in terms of least restrictive means.
Nevertheless, it is well established that courts must review statutes and procedures that impact fundamental rights under a strict scrutiny analysis. See F.L., 880 So.2d 602, 607 (Fla.2004); Moore v. City of E. Cleveland, Ohio, 431 U.S. 494, 551, 97 S.Ct. 1932, 52 L.Ed.2d 531 (1977) (noting that strict scrutiny standard applies when fundamental interest is involved); see also Santosky, 455 U.S. at 754, 102 S.Ct. 1388 (citing Lassiter v. Dep’t of Social Servs., 452 U.S. 18, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981), for the proposition that the nature of the process due in termination of parental rights proceedings rests on the balancing of three factors: the private interests affected, the risk of error resulting from the state’s procedure, and the countervailing governmental interest being used in support of the procedure). When a court examines the constitutionality of a statute that restricts a fundamental right, it must determine that the legislature was addressing a compelling state interest and utilized the least restrictive means to address that interest. F.L., 880 So.2d at 602 (citing Beagle v. Beagle, 678 So.2d 1271, 1276 (Fla.1996)).
In the context of termination proceedings, it is rather easy to conclude that the State has a compelling interest in protecting children from severe abuse, neglect, or abandonment by their parents. However, deciding whether the legislature chose the least restrictive means to address this interest can be quite difficult. When a parent’s fundamental right is restricted, not by a procedural requirement, but by the substantive grounds for termination, strict scrutiny is a form of substantive due process analysis. See Mitchell v. Moore, 786 *995 So.2d 521, 527 (Fla.2001); Smith v. Fisher, 965 So.2d 205, 208-09 (Fla. 4th DCA 2007); see also In re Parental Rights as to D.R.H., 120 Nev. 422, 92 P.3d 1230 (2004) (upholding a statute authorizing termination of parental rights by applying strict scrutiny in a substantive due process challenge).
III. The As-Applied Substantive Due Process Review has Resulted in Varying Approaches in the Trial and Appellate Court, Which Other States Seem to Have Avoided
Thus, based on the reasoning of Santo-sky, Padgett applied a strict scrutiny review to address a due process issue that has been interpreted to be a substantive due process issue, even though Santosky had addressed only a procedural due process issue. It is not necessarily wrong to extend Santosky to substantive due process issues. But the procedural due process issue in Santosky could be fixed by a simple rule change. After the court in Padgett neither expressly approved nor disapproved the text of the relevant statutes when conducting its strict scrutiny review, the trial courts have been left with a rather awkward case-by-case approach.
This case-by-case approach has varied. Some cases simply hold that, because parental rights constitute a fundamental liberty interest, in order to terminate those rights, DCF must prove not only that a statutory ground for termination has been met but also that termination is the least restrictive means of protecting the child from harm. See, e.g., N.S. v. Dep’t of Children & Families, 36 So.3d 776, 778 (Fla. 3d DCA 2010); C.A.T. v. Dep’t of Children & Families, 10 So.3d 682, 684 (Fla. 5th DCA 2009). Other cases apply the least restrictive means test as a means of testing whether the state made a good faith effort to rehabilitate the parent and to determine the best interests of a child. See, e.g., C.G. v. Dep’t of Children & Families, 67 So.3d 1141, 1143 (Fla. 3d DCA 2011). Such application seems to expand the least restrictive means analysis into the dispositional phase. See C.G., 67 So.3d at 1143 (citing Padgett, 577 So.2d at 571); see also M.I. v. Dep’t of Children & Families, 45 So.3d 878, 882 (Fla. 4th DCA 2010) (noting that in determining whether to terminate parental rights, trial courts “must choose the permanency option that is the least restrictive means of protecting a child from serious harm” and that “[t]he best interest of the child is the primary consideration in determining the permanency goal” (citation omitted)). Still other cases have transformed the requirements for termination into a three-step process that seems to subject a child’s manifest best interests to a least restrictive means analysis: “To terminate parental rights, the State must establish: (1) the existence of one of the statutory grounds set forth in Chapter 39; (2) that termination is in the best interest of the child; and (3) that termination is the least restrictive means of protecting the child from harm.” R.L. v. Dep’t of Children & Families, 63 So.3d 920, 921-922 (Fla. 5th DCA 2011); see also S.H., 49 So.3d at 851; T.H. v. Dep’t of Children & Families, 56 So.3d 150, 154 (Fla. 4th DCA 2011). Candidly, I am not certain which description is the most accurate to explain the process that has evolved since Padgett.
In suggesting that the appellate courts should not extend the as-applied least restrictive means test to expedited termination proceedings and that Florida may wish to reexamine the use of this test even in typical termination cases, I believe it is appropriate to consider the law of other states. I would concede that I have not performed a complete state-by-state review of this issue.
*996 A few states appear to conduct a non-statutory, case-by-case, least restrictive means analysis similar to Florida’s approach, at least in cases where there is some likelihood that the parents’ behavior can improve.[9] However, several states have held that such a test is not required prior to ordering termination where grounds for termination have been proven and termination is otherwise in the children’s best interests.[10] The laws of these states suggest that the legislature might be able to amend chapter 39 in a manner that would relieve the trial courts of their current obligation to do a substantive due process analysis as-applied in every case.
I appreciate the wisdom of the court’s decision today to continue to require the trial courts to use the same general procedures and rules in termination proceedings that have been used for the last generation, but I am convinced that there is no adequate legal basis to justify the current “least restrictive means” case law. If or when we can revisit this law without harming children or disrupting families, we should do so.

. Although I am inclined to believe that the proper analysis of this substantive due process issue is a matter worthy of review in the supreme court, it is not an issue that is dis-positive in this case. Accordingly, it does not appear to be an issue that we can certify as one of great importance. See Pirelli Armstrong Tire Corp. v. Jensen, 777 So.2d 973 (Fla.2001).

. The opinion reflects that the trial court had determined that there were "no less restrictive alternatives available other than the permanent commitment of the child to the Department for subsequent adoption.” Padgett, 577 So.2d at 568.

. I acknowledge that there are other grounds for expedited termination proceedings, see § 39.806(l)(e)-(Z). Not all of these grounds have been examined facially to determine whether they are sufficiently narrow to withstand strict scrutiny. It is entirely possible that an as-applied analysis would not be required to satisfy strict scrutiny in cases involving any of those statutory provisions. Indeed, if an as-applied analysis is not required in cases involving egregious conduct or aggravated child abuse, it only follows that such an analysis should not be required in cases involving the murder or manslaughter of another child. See § 39.806(l)(h). However, because this case involves only the statutory grounds of egregious conduct and aggravated child abuse pursuant to sections 39.806(l)(f) and (g), I do not attempt to define every conceivable situation that does not require an as-applied analysis.

. Santosky was decided shortly after Lassiter v. Department of Social Services, 452 U.S. 18, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981), which held that due process did not require the appointment of an attorney to represent indigent parents in such proceedings. The dissenters in Lassiter, having failed to obtain counsel for the parents, were shortly thereafter successful in imposing upon the states a high burden of proof in termination proceedings.

. See, e.g., In re Justin H., 18 Neb.App. 718, 791 N.W.2d 765, 773 (2010); People ex rel. J.I.H., 768 N.W.2d 168, 174 (S.D.2009); D.M.P. v. State Dep’t of Human Resources, 871 So.2d 77, 84-97 (Ala.Civ.App.2003); In re Jeffrey R.L., 190 W.Va. 24, 435 S.E.2d 162, 171 (1993); In re S.D., Jr., 549 P.2d 1190, 1200-01 (Alaska 1976).

. See, e.g., In re Dependency of K.M., 162 Wash.App. 1036 (Wash.Ct.App.2011); In re L.J.W., 252 P.3d 647 (Kan.Ct.App.2011); Friend v. Ark. Dep't of Human Servs., 2009 Ark. App. 606, 344 S.W.3d 670, 678 (2009); In re Cody W., 31 Cal.App.4th 221, 36 Cal. Rptr.2d 848, 852 (1994); In re L.A., III, 154 Vt. 147, 574 A.2d 782, 786 (1990). We note that the District of Columbia courts have also indicated, in the context of an appeal from an adoption petition, that a least restrictive means analysis is not required to pass constitutional muster. See In re Baby Boy C., 630 A.2d 670, 681-82 (D.C.1993). Texas courts, meanwhile, appear to be split. Compare In re C.L.S., No. 14-97-00580-CV, 1998 WL 3646, at *3 (Tex.App. Jan. 8, 1998), with In re S.H.A., 728 S.W.2d 73, 91-92 (Tex.App.1987).