# Third District Court of Appeal

## State of Florida

Opinion filed November 1, 2023.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D22-1756
Lower Tribunal Nos. 22-15273 & 18-11181
_____

**Hayet Naser Molina,**
Appellant,

vs.

**Alfredo Jose Salvi Fuenmayor,**
Appellee.


An Appeal from the Circuit Court for Miami-Dade County, Scott M. Bernstein, Judge.

Robert C. Gindel, Jr., P.A., and Robert C. Gindel, Jr. (Boynton Beach), for appellant.

PAG Law PLLC, and Brett A. Barfield, and Alexandra Goodstone; Robert J. Hanreck, P.A., and Robert J. Hanreck, for appellee.


Before LINDSEY, GORDO, and LOBREE, JJ.

LINDSEY, J.

Appellant Hayet Naser Gomez Molina (the "Mother") appeals from a final order terminating her parental rights to M.N., her minor daughter, and granting sole parental responsibility to Appellee Alfredo Jose Salvi Fuenmayor (the "Father"). The trial court relied on four independent statutory grounds for termination pursuant to § 39.806(1), Florida Statutes (2023). Because competent substantial evidence supports termination under at least one of the statutory grounds, we affirm.

## I. BACKGROUND

This appeal arises from a contentious and protracted custody battle. M.N. was born in Venezuela in 2011; her parents are Venezuelan citizens. The parties' relationship had ended by the time M.N. was born, but both parents were involved in the child's life in accordance with a custody arrangement approved by a Venezuelan court. In July 2012, the Mother took M.N. to Miami, which resulted in the Father filing a petition in the Southern District of Florida for return of the child to Venezuela pursuant to the Hague Convention. The court granted the Father's petition and ordered the child to be returned. See Gomez v. Fuenmayor, 14-CV-24733-KMM, 2015 WL 12977397, at *2 (S.D. Fla. Apr. 29, 2015) (citing Fuenmayor v. Gomez, Case No. 1:13-cv-22357-MGC, at ECF No. 29). M.N. and both parents returned to Venezuela.

M.N. lived with her Father in Venezuela until he relocated to the United States in February 2014. This resulted in a second federal Hague Convention case—this time filed by the Mother. Following a two-day bench trial, the court denied the Mother's petition. Id. at *8.[1] Consequently, the Father and M.N. remained in the United States. The Mother subsequently moved to the United States. It is undisputed that the Mother has not seen M.N. since July 2013.

In May 2018, the Mother filed the underlying Petition to prevent M.N. from leaving Miami-Dade County. In response, the Father filed an Answer and Counterpetition for termination of the Mother's parental rights. Both petitions were set for an adjudicatory hearing, which took place over the course of five days. The lower court heard testimony from the Father, the Mother, M.N.'s Guardian ad Litem,[2] and various other witnesses. Following the hearing, the court entered a 26-page Final Judgment terminating the Mother's parental rights based on the following four statutory grounds: (1) abandonment (§ 39.806(1)(b)); (2) conduct threatening the life, safety, well-being, or physical, mental, or emotional health of the child irrespective of the

---

[1] The Eleventh Circuit affirmed the district court's denial of the Mother's petition. Gomez v. Fuenmayor, 812 F.3d 1005 (11th Cir. 2016).

[2] The Guardian ad Litem also submitted a detailed 18-page report.

3

provision of services (§ 39.806(1)(c)); egregious conduct (§ 39.806(1)(f)); and conspiracy or solicitation to murder the other parent (§ 39.806(1)(h)). The Mother timely appealed.

## II.    ANALYSIS

On appeal, the Mother challenges the trial court's findings with respect to all four statutory grounds it relied on in support of termination. "We review the trial court's findings under the highly deferential competent substantial evidence standard of review." S.M.O. v. Dep't of Child. & Fams., 357 So. 3d 773, 777 (Fla. 3d DCA 2023). It is "the function of the trial court . . . to evaluate and weigh the testimony and evidence based upon its observation of the bearing, demeanor and credibility of the witnesses appearing in the cause." Shaw v. Shaw, 334 So. 2d 13, 16 (Fla. 1976). Accordingly, it is not our role "to substitute [our] judgment for that of the trial court through re-evaluation of the testimony and evidence from the record on appeal . . . ." Id. In short, overturning a trial court's determination to terminate parental rights is a high hurdle when supported by both factual and credibility findings, as is the case here.

"[B]efore terminating parental rights, 'the trial court must find that the Department established by clear and convincing evidence the following: (1) the existence of at least one statutory ground for terminating parental rights

set forth in section 39.806(1); (2) termination is in the manifest best interest of the child; and (3) termination is the least restrictive means to protect the child from serious harm.'" D.M. v. Dep't of Child. & Fams., 315 So. 3d 90, 93 (Fla. 3d DCA 2020) (quoting L.Q. v. Dep't of Child. & Fams., 282 So. 3d 958, 962 (Fla. 3d DCA 2019)).

The first statutory ground the trial court relied on was abandonment pursuant to § 39.806(1)(b).[3]  The court found that the Mother, while being able, made no contribution to the child's care and maintenance and failed to maintain a positive relationship with her.  The court further found that M.N., who was 11 years old at the time of the hearing, had not seen her mother

---

[3] Abandonment is defined in § 39.01(1), in relevant part, as follows:

> (1) "Abandoned" or "abandonment" means a situation in which the parent or legal custodian of a child or, in the absence of a parent or legal custodian, the caregiver, while being able, has made no significant contribution to the child's care and maintenance or has failed to establish or maintain a substantial and positive relationship with the child, or both. For purposes of this subsection, "establish or maintain a substantial and positive relationship" includes, but is not limited to, frequent and regular contact with the child through frequent and regular visitation or frequent and regular communication to or with the child, and the exercise of parental rights and responsibilities. Marginal efforts and incidental or token visits or communications are not sufficient to establish or maintain a substantial and positive relationship with a child.

since she was two years old. Though the Mother testified that she made efforts to establish a relationship with M.N., the court found that these efforts were not sufficient.

Based on the ample testimony and other evidence below, including the Guardian ad Litem's detailed report, we must conclude that the trial court's findings were supported by competent substantial evidence.[4] Because the existence of only one statutory ground is necessary for termination of parental rights, we need not consider the other three grounds the trial court relied on. See, e.g., S.M.O., 357 So. 3d at 778 (explaining that the existence of only one statutory ground is necessary for termination of parental rights).

Having concluded that at least one of the statutory grounds is supported by competent substantial evidence, we briefly address the least restrictive means requirement. Ordinarily, a good faith effort should be made

---

[4] The Mother argues the trial court and the Guardian ad Litem were prohibited from relying on the federal court findings in the two Hague Convention cases. See 22 U.S.C. § 9001(b)(4) ("The Convention and this chapter empower courts in the United States to determine only rights under the Convention and not the merits of any underlying child custody claims."). Even assuming arguendo this is true, both the trial court and the Guardian ad Litem's report did not exclusively rely on the findings in the Hague Convention cases. Indeed, the trial court expressly stated in its order that "the issues before the federal courts were not quite the same as the issues before this court. . . . [T]his Court analyzed the facts (both those presented before this Court and those established by judicial notice from the federal litigation) . . . to reach a conclusion regarding [M.N.'s] manifest best interest."

to rehabilitate the parent and reunite the family.  Padgett v. Dep't of Health & Rehab. Servs., 577 So. 2d 565, 571 (Fla. 1991).  However, this is not required in certain extraordinary circumstances because the best interest of the child must ultimately prevail.  See In Interest of T.M., 641 So. 2d 410, 413 (Fla. 1994); see also F.L.C. v. G.C., 24 So. 3d 669, 671 (Fla. 5th DCA 2009) ("[T]he least restrictive means test is not intended to preserve the parental bonds at the cost of a child's future.").

Here, given the circumstances in this case, the trial court determined that termination of the Mother's parental rights satisfied the least restrictive means requirement.  Because it is not our role to evaluate and weigh the evidence, we are compelled to affirm.  Moreover, as the trial court correctly concluded in its order, reasonable efforts to preserve and reunify the family are not required for the grounds pled in the Father's underlying Counterpetition.  See § 39.806(2), Fla. Stat. (2023) ("Reasonable efforts to preserve and reunify families are not required if a court of competent jurisdiction has determined that any of the events described in paragraphs (1)(b)-(d) or paragraphs (1)(f)-(m) have occurred.").

## III.    CONCLUSION

Because competent substantial evidence supports termination of parental rights under at least one of the statutory grounds set forth in §

7

39.806(1), we affirm the Final Judgment terminating the Mother's parental rights.  Moreover, based on the circumstances in this case, we hold that the trial court did not err in failing to require a good faith effort to rehabilitate the Mother and reunite the family.

Affirmed.