867 So.2d 573 (2004)
M.M., Appellant,
v.
DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Appellee.
No. 3D03-335.
District Court of Appeal of Florida, Third District.
March 3, 2004.
Albert W. Guffanti, for appellant.
Hillary S. Kambour, Program Attorney; Calianne P. Lantz, Assistant District Legal Counsel, for appellee.
Before GERSTEN, FLETCHER, and SHEPHERD, JJ.
SHEPHERD, J.
M.M. appeals the termination of her parental rights as to her three children, M.O., M.O. and E.O. We find that there was substantial competent evidence to support the decision of the trial court and therefore affirm.
The Department of Children and Families (DCF) took M.O., M.O. and E.O. into custody on December 18, 1997, upon allegations that M.M. had a substance abuse problem and had abandoned them. The mother was offered a pre-adjudicatory case plan and the children were reunited *574 with their mother on July 2, 1999. However, the appellant did not care for her children and they were back in the custody of DCF within a month. Appellant asked that the children remain in foster care until she completed a substance abuse program, included as a part of the plan.
By June 2000, M.M. apparently was not proceeding satisfactorily, prompting the filing of a formal petition to terminate M.M.'s parental rights. A few months later M.M. was offered a last chance reunification plan and the petition was abated. Perhaps recognizing the seriousness of the situation, M.M. began to make progress. By February 2001, she had completed all conditions of the plan except obtaining appropriate housing and employment. For well over a year after that, the trial court and DCF continuously worked with M.M. to give her the opportunity to meet these conditions. At one point, when M.M. obtained housing at Camillus House, the trial court even gave M.M. custody of her daughter. However, shortly thereafter M.M. left this placement, only to abandon the child at the home of M.M.'s mother, who asked DCF to return the child to foster care. DCF reinstated the petition.
At a hearing on the petition in August 2002, M.M. was given a final ninety-day periodan "absolute last chance" with "no excuses"to find gainful and stable employment and housing. M.M. was then living at her mother's house, a placement that DCF previously had found to be unacceptable for the children. M.M. claimed to be working at a job that paid her "under the table."
In November 2002, the case was heard again. The nature of M.M.'s employment had not changed. With respect to housing, M.M. claimed that she had managed to locate temporary, month-to-month housing four days before the hearing. Counsel for M.M. argued that she had successfully completed the plan and was entitled to be reunited with her children. The trial court disagreed, essentially concluding that these efforts were too little, too late. The court was bolstered in its decision by the testimony of the family's therapists who opined that after five years, M.M.'s three children desperately needed stability and that reuniting them with their mother under these circumstances would be detrimental to the children's manifest best interests. The guardian ad litem agreed.
As grounds for termination, § 39.806(1)(e), Fla. Stat. (2002), states in relevant part, "failure of the parents to substantially comply [with the case plan] for a period of 12 months after an adjudication of the child as a dependent ... constitutes evidence of continuing abuse, neglect, or abandonment...." In F.A.F. v. Department of Children and Family Services, 804 So.2d 616 (Fla. 3d DCA 2002), we held that a judgment will be affirmed where substantial, competent evidence supports an order terminating parental rights.
The record here shows that M.M. has authored her own undoing. When given two opportunities to reunite with her children, she botched both events, causing the children to suffer episodic abandonment. M.M. has had chance after chance to reunite with her children in a timely and responsible way. Yet, her repeated failure to complete the underlying objectives of the case plan[1] has left her children, M.O., *575 M.O., and E.O., to languish in the system for five years under DCF and court supervision. We are left with one impression M.M. is not genuinely interested in having a future with her children. See In the Interest of L.R.R., 455 So.2d 598 (Fla. 5th DCA 1984) (parent's inability to provide a proper and fit home coupled with abandonment or lack of a genuine interest in her children for almost a two-year period warranted termination of parental rights). There is ample record evidence to support the decision of the trial court in this case that M.M.'s parental rights are deserving of termination.
Affirmed.
NOTES
[1] In this case, the issue really is not the failure to have adequate employment or housing, for neither are legally required, per se, to be an adequate parent. In the Interest of J.R.C., 480 So.2d 198 (Fla. 5th DCA 1985). The Depression Era alone proves that families can successfully weather the storms of unemployment and poverty. Rather, the issue in this case is whether M.M.'s lackadaisical approach to completing her case reunification plan evidences an unwillingness on her part to organize her life in such a fashion as to care for her children.