SUAREZ, J.
 

 The Mother, C.G., seeks to reverse a final order terminating her parental rights pursuant to section S9.806(l)(e)l, Florida Statutes (2010).
 
 [1]
 
 Because there is competent substantial evidence in the record that the Mother failed to substantially comply with the reunification plans and continued to place her child at risk of harm, we affirm the trial court’s findings that clear and convincing evidence supports the termination.
 

 The record shows that the child, A.G., came into state care on October 14, 2008,
 
 *1143
 
 when she was three years old, after the court found that the Mother’s mental health issues put the child at risk of harm. On December 1, 2008, after the Mother was committed pursuant to the Baker Act, she consented to her child being adjudicated dependent. § 394.467, Fla. Stat. (2010). Thereafter, A.G. was briefly returned to her mother’s care, but ended up back in state custody on January 27, 2009, after C.G. was convicted of prostitution. The child was then placed with her paternal aunt for five months, until she was once again put into foster care in May, 2009. The father is not involved.
 

 On October 7, 2010, the court changed the primary goal of the case plan to adoption and on November 4, 2010, the Department of Children and Families (“DCF”) filed a petition to terminate C.G.’s parental rights. During the termination proceedings, DCF moved for the court to take judicial notice of numerous documents, including court orders and case plans. C.G. argued that DCF was required to re-prove its dependency case by a higher standard of review, i.e., clear and convincing, during the termination proceeding. The court said it would take notice of the adjudication of dependency record, but that it would not consider the dependency orders proven by “clear and convincing evidence.” Rather, the court noticed the orders based upon the weight by which they were entered in the dependency proceedings. The court agreed, on the other hand, that the findings upon which any termination was to be based must be by clear and convincing evidence. Based on the judicially noticed dependency record and order, as well as the additional in-court testimony of several witnesses, the court decided that the least restrictive means of protecting A.G. was to terminate C.G.’s parental rights.
 

 Appellate review of a termination of parental rights case is “highly deferential.”
 
 D.P. v. Dep’t of Children & Family Servs.,
 
 930 So.2d 798, 801 (Fla. 3d DCA 2006) (citing
 
 N.L. v. Dep’t of Children and Family Servs.,
 
 843 So.2d 996, 999 (Fla. 1st DCA 2003)). That is, a “finding that evidence is clear and convincing enjoys a presumption of correctness and will not be overturned on appeal unless clearly erroneous or lacking in evidentiary support.”
 
 Id.
 
 at 801. With this in mind, the standard of review is whether the trial court’s judgment is supported by substantial and competent evidence.
 
 T.V. v. Dep’t of Children and Family Servs.,
 
 905 So.2d 945, 946 (Fla. 3d DCA 2005).
 

 In order to terminate parental rights, the state must prove “that it has made a good faith effort to rehabilitate the parent and unify the family through a case plan and related services.”
 
 Padgett v. Dep’t of Health & Rehabilitative Servs.,
 
 577 So.2d 565, 571 (Fla.1991). In
 
 Padgett,
 
 the Florida Supreme Court balanced the fundamental right of parents to raise their children with the ultimate welfare of the child. It determined that:
 

 To protect the rights of the parent and child, we conclude that before parental rights in a child can be permanently and involuntarily severed, the state must show by clear and convincing evidence that reunification with the parent poses a substantial risk of significant harm to the child....
 

 We note that because parental rights constitute a fundamental liberty interest, the state must establish in each case that termination of those rights is the least restrictive means of protecting the child from serious harm.
 

 Id.
 
 at 571 (emphasis added). Courts use a “least restrictive means” analysis to evaluate the state’s good faith effort and to determine the best interest of the child.
 
 Id.; N.S. v. Dep’t of Children & Families,
 
 36 So.3d 776, 780 (Fla. 3d DCA 2010),
 
 *1144
 

 review denied,
 
 46 So.3d 566 (Fla.2010);
 
 B.F. v. Dep’t of Children and Family Servs.,
 
 929 So.2d 620 (Fla. 3d DCA 2006).
 

 The record shows that the Mother was assigned five different reunification plans over a two-year period. Each plan required C.G. to maintain a job and secure safe, consistent housing, to undergo regular mental health evaluations and medication management, and to attend substance abuse therapy and parenting classes. At the termination hearing, the witnesses who testified included the dependency services case manager with the Center for Child and Family Enrichment, the child’s Guardian ad Litem, the therapist at the Center for Child and Family Enrichment, the mother’s outpatient substance abuse therapist at the Miami Behavioral Health Center, and the dyadic therapist from the Linda Rey Intervention Center. These witnesses testified that C.G. failed to complete the assigned psychotherapy sessions, medication management program and the dyadic therapy; they testified that C.G. also failed to complete her substance abuse therapy because she stopped attending the counseling sessions and refused to follow a court order that directed her to go into an inpatient substance abuse program. Although C.G. attended the parenting classes, her score on a post-services test led the case manager to conclude that reunification was not a safe option for the child.
 

 The trial court made it clear it did not rely solely on the judicially noticed orders or on any hearsay contained therein to reach its conclusion to terminate C.G.’s parental rights. The facts upon which the dependency orders had been rendered were re-established and added to with clear and convincing evidence provided by the testimony of the case managers, the guardian ad litem, and the therapists involved with C.G. and her child over the past months. The court explicitly stated that it took appropriate judicial notice of the underlying dependency orders and findings,
 
 [2]
 
 found that there was clear and convincing evidence that the Mother did not substantially comply with the case plans,
 
 [3]
 
 and that it was in the manifest best interests of the child to terminate the mother’s parental rights.
 
 See R.A. v. Dep’t of Children & Family Servs.,
 
 724 So.2d 574 (Fla. 3d DCA 1998) (finding without merit the parent’s contention that the dependency order findings had to be re-proven by the higher standard for termination proceedings).
 

 We conclude that the trial court’s finding that clear and convincing evidence supported the termination of parental rights was based, in part, on competent and substantial evidence contained in the underlying dependency records. The state additionally demonstrated, by clear and convincing testimonial evidence, that C.G. failed to substantially comply with
 
 *1145
 
 the case plans and made little effort to remedy the harmful behavior and circumstances that initially brought her child into foster care. We thus agree with the trial court that termination of the Mother’s parental rights is the least restrictive means of protecting “the ultimate welfare of the child.”
 
 Padgett,
 
 577 So.2d at 570 (citing
 
 State ex rel. Sparks v. Reeves,
 
 97 So.2d 18, 20 (Fla.1957)).
 

 Affirmed.
 

 [1]
 

 . Section 39.806(l)(e)l, Florida Statutes (2010), provides:
 

 (1) Grounds for the termination of parental rights may be established under any of the following circumstances:
 

 [[Image here]]
 

 (e) When a child has been adjudicated dependent, a case plan has been filed with the court, and:
 

 1. The child continues to be abused, neglected, or abandoned by the parent or parents. The failure of the parent or parents to substantially comply with the case plan for a period of 9 months after an adjudication of the child as a dependent or the child’s placement into shelter care, whichever occurs first, constitutes evidence of continuing abuse, neglect, or abandonment unless the failure to substantially comply with the case plan was due to the parent’s lack of financial resources or to the failure of the department to make reasonable efforts to reunify the parent and child .... (emphasis added)
 

 [2]
 

 . It is "proper for the trial court to take judicial notice of the prior court orders [because a] court record is not subject to dispute."
 
 N.W. v. Dep’t of Children & Families,
 
 865 So.2d 625, 626 (Fla. 4th DCA 2004); § 90.202(6), Fla. Stat. (2010).
 

 [3]
 

 . The record shows that C.G. did not substantially comply because she failed to participate in or failed to benefit from the services provided by DCF and this failure to comply endangered her child. The court correctly concluded that C.G.’s "failure to substantially comply ... was not due to either the lack of financial resources ... or by the failure of the Department to make reasonable efforts [in good faith] to reunify die Mother with the Child.”
 
 See M.M. v. Dep’t of Children and Family Servs., 867
 
 So.2d 573, 574-75 & n. 1 (Fla. 3d DCA 2004) (finding the Mother's "lackadaisical approach to completing her case reunification plan evidence[d] an unwillingness to organize her life in such a fashion as to care for her children” and that she "authored her own undoing”).