FORST, J.
A father appeals the trial court’s final judgment terminating his parental rights as to his child, J.V.E. On appeal, the father maintains that termination of his parental rights was not supported by the evidence in the record. We affirm, concluding that the termination of parental rights was supported by competent substantial evidence.
The Record Before the Trial Court
The trial court found that termination of the father’s parental rights was supported by sections 39.806(l)(b), (c), (e)(1), and (e)(2), Florida Statutes (2012). The court also ordered the termination of the mother’s parental rights.[1] The initial dependency petition alleged substance abuse by both parents, arrests for violence, and a history of domestic violence, as well as failure to provide support by the father. A shelter petition was then filed, and the child was placed in shelter care with his maternal aunt, where he continues to reside.
In the meantime, both parents were provided with case plans and given tasks to complete. Over one year later, the Guardian Ad Litem (“GAL”) recommended that the State move towards termination of the parental rights of the father. Ultimately, nearly two years after the child was initially removed, there was a trial to determine whether the mother’s and father’s parental rights should be terminated. In finding that termination of the father’s rights was *427 supported by several statutory provisions and was in the best interests of the child and the least restrictive means of protecting the child from harm, the court noted the following:
• It was recommended that the father attend eighteen substance abuse outpatient group sessions and six individual sessions; the father completed only eleven of the eighteen group sessions, and three of the six individual sessions.
• The father missed scheduled drug screenings on at least twenty occasions and tested positive for marijuana on the following 2012 dates: May 3, June 14, 21, and 28, August 1, and two additional tests in August. The father never had a negative drug screen and the caregiver testified that, on at least one occasion, the father appeared to be under the influence of marijuana when he showed up for a visit with his child. Moreover, the father has a long history of drug related convictions, the latest of which being a 2009 conviction for the possession of cocaine.
• The father was required to visit the child three times a week. The father visited the child three times during the same week only once. The father did not attempt to visit the child from April 2011 until October 2011.
• The father paid the caregiver the required $60 per week on nine occasions over the course of over a year; at the time of the trial, it had been almost three months since the father last paid the caregiver.
• Once when the father was informed that the child was sick, the father made no inquires into the child’s health, and made no attempts to visit the child during that illness.
Standard of Review
This court has previously set forth the “multi-step process inherent in the statutory scheme for termination of parental rights”:
First, the trial court must find by clear and convincing evidence that one of the grounds set forth in section 39.806, Florida Statutes (2007), has been established. Rathburn v. Dep’t of Children & Families, 826 So.2d 521, 523 (Fla. 4th DCA 2002). Second, the trial court shall consider the manifest best interests of the child by evaluation of all relevant factors, including those set out in section 39.810. Id. In addition, the Department must establish that termination of parental rights is the least restrictive means of protecting the child from harm. In re G.C., 6 So.3d 643, 648 (Fla. 2d DCA 2009). While a trial court’s decision to terminate parental rights must be based upon clear and convincing evidence, our review is limited to whether competent substantial evidence supports the trial court’s judgment. See T.C. v. Dep’t of Children & Families, 961 So.2d 1060, 1061-62 (Fla. 4th DCA 2007).
J.G. v. Dep’t of Children & Families, 22 So.3d 774, 775 (Fla. 4th DCA 2009).
Appellate courts review orders terminating parental rights using a “highly deferential” standard of review: “[t]hat is, ‘a finding that evidence is clear and convincing enjoys a presumption of correctness and will not be overturned on appeal unless clearly erroneous or lacking in evi-dentiary support.’ ” D.P. v. Dep’t of Children & Family Servs., 930 So.2d 798, 801 (Fla. 3d DCA 2006) (quoting N.L. v. Dep’t of Children & Family Servs., 843 So.2d 996, 999 (Fla. 1st DCA 2003)). Moreover, so long as the trial court’s ruling on one of the statutory grounds set forth in section 39.806, Florida Statutes, is supported by *428 the evidence, the court’s decision is affirm-able. See R.S. v. Dep’t of Children & Families, 872 So.2d 412, 413 (Fla. 4th DCA 2004) (holding that the ultimate outcome is not impacted by reversal on one ground when another ground supports termination). In this opinion, we discuss two of those statutory bases.
The Father abandoned the Child
With reference to the findings set out above, there is clear and convincing evidence that the father abandoned the child as contemplated by sections 39.806(l)(b) and 39.01(1), Florida Statutes.[2] “Marginal efforts and incidental or token visits or communications are not sufficient to establish or maintain a substantial and positive relationship with a child.” § 39.01(1), Fla. Stat. (2012). Although the father has had periods of unemployment, there is evidence that the father demonstrated financial ability to support the child, at least in the court-ordered amount of $60 per week. At the time of trial, it had been three months since the father last paid the caregiver for the support of his child.
Additionally, the father’s visitation with the child was anything but “frequent and regular,” and was more akin to “[m]arginal efforts and incidental or token visits....” See id. (“Marginal efforts and incidental or token visits or communications are not sufficient....”) There was testimony that this infrequent and irregular visitation caused the child to not see the father in a parental role, despite the child knowing that this individual was in fact his father.
The Father did not substantially comply with his Case Plan.
Section 39.806(l)(e), Florida Statutes provides grounds for termination of parental rights when the “child continues to be abused, neglected, or abandoned by the parent or parents.” § 39.806(l)(e), Fla. Stat.
The failure of the parent ... to substantially comply with the case plan for a period of 12 months after an adjudication of the child as a dependent child or the child’s placement into shelter care, whichever occurs first, constitutes evidence of continuing abuse, neglect, or abandonment unless the failure to substantially comply with the case plan was due to the parent’s lack of financial resources or to the failure of the department to make reasonable efforts to reunify the parent and child.
Id. at § 39.806(1)(e)1.
While the record reflects that the father made some marginal attempts to comply with his case plan, it nevertheless appears from the record that the father’s progress during the past two years falls short of “great strides.” Contra D.P., 930 So.2d at 802 (“Mother made great strides ....”). He visited with the child only sporadically (not three times per week as required by the case plan), and made few and very infrequent payments to the child’s caregiver.
The father never received a negative drug screen during the pendency of this case, he admitted at trial to continuing to smoke marijuana “recreationally,” and he failed to complete the required outpatient program before leaving the program *429 altogether. In contrast to the parent who prevailed upon appeal in M.H. v. Department of Children and Families, the father in the instant case did not exhibit a “strong desire to overcome [his] addiction and parent [his child] ....” M.H. v. Dep’t of Children & Families, 866 So.2d 220, 223 (Fla. 1st DCA 2004). Instead, the record reflects an unwillingness on behalf of the father to quit smoking marijuana, even knowing that his refusal to at least make an effort to quit was impeding his (otherwise inconsistent) efforts to regain custody of his child.[3] In Florida, it is still illegal to possess marijuana, let alone smoke it.[4] There is no differentiation in the law between being a marijuana addict and a “recreational” user, contrary to the father’s brief (“he only smokes marijuana recre-ationally”). Thus, there was no legal error with respect to DCF and the trial court relying upon the father’s failure to test negative for marijuana (and, for the most part, failure to test at all) as a factor (along with others, cited above) in finding that he did not substantially comply with his case plan, constituting evidence of continuing abuse, neglect, or abandonment supporting termination of parental rights.
Termination of the Father’s Parental Rights is in the best interests of the Child.
The trial court found that the child is in a stable situation (and has been for two years) with his current caregiver, who indicated her intent to adopt the child should the parents’ rights be terminated. “While the parents have a right to raise their child, it is a right they may forfeit by their conduct. The child, too, has a right to achieve stability in [his] life with parents who will properly care for [him].” D.G. v. Dep’t of Children & Families, 77 So.3d 201, 210 (Fla. 4th DCA 2011). The father’s brief does not contest the trial court’s determination that termination of the father’s parental rights is in the best interests of the child. We find no basis to reverse that holding.
Termination of the Father’s Parental Rights is the least restrictive means to protect the Child from harm.
The Department of Children and Families (“DCF” or “the Department”) “ordinarily must show that it has made a good faith effort to rehabilitate the parent and reunite the family, such as through a current performance agreement or other such plan for the present child.” J.C. v. K.K., 64 So.3d 157, 161 (Fla. 4th DCA 2011) (quoting Padgett v. Dep’t of Health & Rehabilitative Servs., 577 So.2d 565, 571 (Fla.1991)). “[T]he least restrictive means test is not intended ‘to preserve a paternal bond at the cost of a child’s future.’ ” Id. at 163 (quoting In re. K.W., 891 So.2d 1068, 1070 (Fla. 2d DCA 2004)). “The child’s interests are paramount over the father’s desire to now parent his child....” Id. at 164. In J.C., the court held that the least restrictive means test was “clearly met” where “[t]he father’s belated attempts to become a good father amount to too little too late.... ” Id. at 163.
*430 Here, the Department instituted two case plans for the father, the goal of both being reunification. The second amended case plan was implemented only after the father’s failure to comply with the initial case plan. Yet, once again, the father failed to comply with the amended case plan, notwithstanding the Department’s efforts and relative patience. Accordingly, the Department has established that termination of the father’s parental rights was the least restrictive means to protect the child from harm.
Conclusion
For the reasons discussed above, we affirm the trial court’s order terminating the father’s parental rights with respect to J.V.E.

Affirmed.

GROSS and MAY, JJ., concur.

. The mother's appeal of the trial court’s order has been handled separately, and the court's order as to her parental rights was affirmed by this court without opinion. B.F. v. Dep't of Children & Families, 117 So.3d 1102 (Fla. 4th DCA 2013).

. Section 39.806(l)(b) states that parental rights may be terminated upon establishment that the parent has abandoned the child as defined in section 39.01(1), Florida Statutes. § 39.806(l)(b), Fla. Stat. (2012). Section 39.01(1) defines abandonment as "a situation in which the parent ... has made no significant contribution to the child’s care and maintenance or has failed to establish or maintain a substantial and positive relationship with the child, or both.” § 39.01(1), Fla. Stat. (2012).

. In the 1970 movie Love Story, Oliver famously said, "Love means never having to say you’re sorry.” Love Story (Paramount Pictures 1970). Extrapolating another famous phrase from last century, sometimes love means "just say[ing] no.” See Nancy Reagan, Her Causes, Ronald Reagan Presidential Foundation & Library, http://www.reagan foundation. org/details_f. aspx?p=RR1008 NRHC&tx=6 (last visited on Nov. 1, 2013).

. See, e.g., § 893.13(6)(a), Fla. Stat. (2013) ("It is unlawful to be in actual or constructive possession of a controlled substance ....”); § 893.03(l)(c)(7), Fla. Stat. (2013) (listing "Cannabis” as controlled substance).