DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**C.B.,** the Mother,
Appellant,

v.

**STATE OF FLORIDA, DEPARTMENT OF CHILDREN AND FAMILIES,**
Appellee.

No. 4D18-1732

[October 31, 2018]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Stacey Schulman, Judge; L.T. Case No. 14-5274 DP.

Antony P. Ryan, Regional Counsel, and Richard G. Bartmon, Assistant Regional Counsel, Office of Criminal Conflict and Civil Regional Counsel, West Palm Beach, for appellant.

Pamela Jo Bondi, Attorney General, Tallahassee, and Carolyn Schwarz, Assistant Attorney General, Children's Legal Services, Fort Lauderdale, for appellee.

Marynelle Hardee, Defending Best Interests Project, Guardian Ad Litem Program, Gainesville; and Thomasina Moore, Statewide Director of Appeals, and Laura J. Lee, Appellate Counsel, Tallahassee, for Guardian Ad Litem Program.

CIKLIN, J.

C.B. ("the mother") challenges an order terminating her parental rights due to her failure to complete her case plan over a period of approximately three years. Because the mother did not address certain circumstances which caused the creation of the case plan to begin with, we affirm.

The mother's four children—then aged approximately 9 years, 7 years, 4 years, and 11 months old—were sheltered in November 2014. Prior to that, in October 2014, the youngest child fell into a cooler of water that the mother kept in the kitchen and nearly drowned. Following this incident, a child protective investigator ("CPI") went to their home and

discovered the children were living in a condemned, abandoned home with their mother.  The home had broken windows and doors, was filthy, lacked running water, and was in foreclosure.  Additionally, there was an open warrant for the mother for truancy issues involving the children.

The mother indicated that she was moving in with the paternal grandmother, so the CPI placed the mother and children at a hotel for two days.  Instead of moving in with the grandmother, however, the mother returned to the hazardous home, so the children were removed. The father did not have a place for the children to reside and they were placed with non-relatives.

The Department of Children and Families ("DCF") petitioned to adjudicate the children dependent and the mother entered into a mediation agreement in February 2015 in which she agreed to:   (1) provide proof of stable income and housing, (2) provide child support, (3) complete a parenting course, (4) complete couples' counseling, (5) complete psychological evaluation and follow all court-ordered/approved recommendations, and (6) complete individual counseling with the length of time to be determined.  In April 2015, the trial court adjudicated the children dependent and accepted a case plan that incorporated the tasks outlined in the mediation agreement.

The mother underwent several psychological evaluations, each of which reinforced the need for individual trauma-based counseling and possible psychotherapy.   The mother was also eventually ordered to undergo a substance abuse evaluation, after which she was ordered to comply with substance abuse screenings and medication management tasks.

As of October 2015, the mother had voluntarily discontinued individual counseling, and had failed to comply with several other case plan tasks.  She had, however, completed a parenting course.  In May 2016, DCF petitioned for termination of her parental rights.  At a judicial review in August 2016, the mother indicated her desire to participate in the tasks recommended in her substance abuse and psychological evaluations, so the court ordered that the referrals be provided, effectively granting her a second chance.

In April 2017, after a number of referrals and services, the mother was only partially compliant with her individual psychotherapy requirements and had failed to submit to random urinalysis.  DCF filed an amended petition for termination of parental rights in July 2017.  At the judicial review that followed, the court found the mother not

compliant with numerous case plan tasks, including individual psychotherapy and outpatient substance abuse treatment, from which she was unsuccessfully discharged.

The case proceeded to trial. The mother testified that she was living in a four-bedroom home with the maternal grandmother, and had been living there since January 2017. She acknowledged, however, that she failed to provide the necessary paperwork to her child advocate to get the home approved.

Also at trial, a psychologist who evaluated the mother opined that the mother's psychological issues were pervasive enough to affect the mother on a daily basis and that she may not react appropriately to situations involving her children. She further opined that, given the pervasive level of the mother's symptoms, they would not go away on their own and that trauma-focused therapy was necessary. Additionally, while the mother accepted partial responsibility, there were some issues that brought the children into care that the mother would not acknowledge.

The trial court entered an order terminating the mother's parental rights pursuant to section 39.806(1)(e), Florida Statutes (2018), based on her failure to substantially comply with her case plan, despite being given three years to do so.

The mother now appeals. She contends that because she obtained safe housing and completed parenting classes, she remedied the circumstances that caused the creation of the case plan, and consequently, there was not sufficient proof to terminate parental rights under section 39.806(1)(e). We must disagree.

We review a trial court's decision to terminate parental rights for competent, substantial evidence. *J.E. v. Dep't of Children & Families*, 126 So. 3d 424, 427 (Fla. 4th DCA 2013). A ground for terminating parental rights exists:

> (e) When a child has been adjudicated dependent, a case plan has been filed with the court, and:
>
> 1. The child continues to be abused, neglected, or abandoned by the parent or parents. *The failure of the parent or parents to substantially comply with the case plan for a period of 12 months after an adjudication of the child as a dependent child or the child's placement into shelter care, whichever occurs first, constitutes evidence of continuing*

3

*abuse, neglect, or abandonment* unless the failure to substantially comply with the case plan was due to the parent's lack of financial resources or to the failure of the department to make reasonable efforts to reunify the parent and child. . . .

§ 39.806(1)(e)1., Fla. Stat. (emphasis added).

"'Substantial compliance' means that the circumstances which caused the creation of the case plan have been significantly remedied to the extent that the well-being and safety of the child will not be endangered upon the child's remaining with or being returned to the child's parent." § 39.01(78), Fla. Stat. (2018). "Conversely, the lack of substantial compliance means that the circumstances which gave rise to creation of the case plan have not been significantly remedied to the extent that the well being and safety of the child will be endangered upon the child's remaining with or being returned to the parents." *B.L. v. Dep't of Children & Families*, 950 So. 2d 1264, 1266 (Fla. 5th DCA 2007).

Mere completion of services is not equivalent to substantial compliance with a case plan. *See, e.g., A.B.E. v. Dep't of Children & Families*, 47 So. 3d 347, 351 (Fla. 4th DCA 2010) (affirming order terminating parental rights and explaining mother's acceptance of in-home parenting instruction was not sufficient to complete case plan task where mother failed to understand or apply lessons). Furthermore, the circumstances surrounding the creation of the case plan may extend to problems identified subsequent to the children's removal, and not exclusively those identified contemporaneous to removal. For example, in *D.G. v. Department of Children & Families*, 77 So. 3d 201, 202 (Fla. 4th DCA 2011), the child was removed from the mother due to the fact that her sibling was severely physically abused. Despite the mother's completion of case plan tasks such as parenting classes and ending her relationship with the sibling's abusive father, her parental rights were terminated due to failure to complete her case plan and material breaches of the plan where psychologists opined she lacked judgment, she tested positive for drugs twice, and she failed to show up for two drug screens, among other uncompleted tasks. *Id.* at 204-06.

On appeal, the mother in *D.G.* argued that her drug tests should be ignored because "substantial compliance" means remedy of the circumstances that caused the creation of the case plan, which in her case were unrelated to drug use. *Id.* at 207-08. This court disagreed and affirmed, explaining that the mother's drug history and use were mentioned in the original petition for termination and the order of

adjudication of dependency established the drug use as an issue to be addressed through the case plan. *Id.* at 208.

The instant case is somewhat similar to *D.G.* Here, the children were initially sheltered due to inadequate supervision, inadequate housing, and an open warrant for truancy. As the mother contends, the evidence at trial indicated that she indeed completed a parenting course and found better housing. However, early on in the case, the mother agreed to complete individual psychological counseling as well as all court-ordered recommendations resulting from the psychological evaluation when she entered into the mediation agreement. Although neither the dependency petition nor order directly outlined the mother's mental health issues, the initial case plan unequivocally incorporated these tasks and was plainly adopted by the trial court in the order adjudicating the children dependent. Consequently, the original case plan adopted by the court clearly established the mother's mental health as an issue to be addressed.

Moreover, it is important to acknowledge that what is initially recognized as a cause for sheltering children is more often than not a symptom of a larger underlying problem which—by definition—must be addressed. Here, the mother's poor decisions relating to the children prior to DCF intervention were a side effect of her own trauma-based issues. This much was evident by the time the case plan was established. Further, the evidence at trial established as much in that the psychologist transparently linked the mother's mental health issues with her ability to parent.

Because the mother did not complete the case plan tasks required to address mental health issues, there is competent, substantial evidence that she did not substantially comply with her case plan to the extent that the circumstances causing the creation of the plan were remedied.

Consequently, we affirm.

*Affirmed.*

DAMOORGIAN and CONNER, JJ., concur.

\*        \*        \*

***Not final until disposition of timely filed motion for rehearing.***

5