# Third District Court of Appeal

## State of Florida

Opinion filed April 20, 2022.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D21-1935
Lower Tribunal No. 19-15372
_____

**S.A., The Mother,**
Appellant,

vs.

**Department of Children and Families, et al.,**
Appellees.

An Appeal from the Circuit Court for Miami-Dade County, Denise Martinez-Scanziani, Judge.

S.A., The Mother, in proper person.

Karla Perkins, for appellee Department of Children & Families; Sara Elizabeth Goldfarb, Statewide Director of Appeals, and Desirée Erin Fernández, Senior Attorney (Tallahassee), for appellee Guardian ad Litem.

Before SCALES, LINDSEY and GORDO, JJ.

GORDO, J.

S.A., the mother, appeals a trial court order terminating her parental rights. We have jurisdiction. Fla. R. App. P. 9.030(b)(1)(A). Because the record contains competent, substantial evidence demonstrating the mother materially breached the case plan and failed to substantially comply with its terms in violation of section 39.806(1)(e)1. and 2., Florida Statutes (2021), we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

In June 2019, the mother was arrested for disorderly conduct and child neglect as to her child H.D. after exhibiting aggressive behavior at a local mall. The mother subsequently spent twenty-two days in jail. The Department of Children and Families ("DCF") investigated and implemented a safety plan. During its investigation, it was discovered the mother had a severe psychiatric condition, had been involuntarily hospitalized pursuant to Florida's Baker Act more than ten times and was not compliant with her medication.[1] As part of the safety plan, H.D. was placed in her paternal great grandmother's care. The great grandmother also agreed to supervise visits between H.D. and her parents.

---

[1] In 2009, the mother was diagnosed with schizoaffective disorder, bipolar type.

In August 2019, H.D. was sheltered and DCF petitioned for her dependency. The mother failed to appear at the arraignment hearing. In September 2019, the trial court adjudicated H.D. dependent and accepted DCF's proposed six-month case plan with the goal of reunification. The trial court ordered the mother to complete the case plan tasks which in part, required she attend individual therapy, undergo a mental health evaluation, comply with any recommended treatment and participate in medication management.

At her first judicial review hearing, the mother was present and was found to be partially compliant with the case plan, however she had not seen a psychiatrist and continued to refuse to take her medication. The trial court ordered a new case plan with a reunification goal date of July 2020. Days later, the mother was again involuntarily hospitalized after decompensating because she elected to stop taking her medication.

In April 2020, the mother decided to comply with taking her medication and became more stabilized. The trial court ordered a new case plan which required the mother to additionally submit to in-patient mental health treatment with a reunification goal date of October 2020. The plan was ordered based on her psychiatrist's recommendation that she required 24-hour medical care for a period to fully stabilize and become medication

3

compliant. After the hearing, the mother refused to attend in-patient treatment. In September 2020, the mother stopped seeing her psychiatrist, stopped attending medication management and was subsequently hospitalized involuntarily for two weeks after refusing to take her medication.

At the October 2020 hearing, the trial court again found the mother continued to be in material breach of her case plan. The mother failed to attend her medication management appointments and was not taking her medication. Nonetheless, the trial court extended the reunification case plan one last time to allow the mother an opportunity to meet the goal date of January 2021. In January 2021, the mother resumed monthly appointments with her psychiatrist. The mother thereafter failed to return H.D. within the required time under the unsupervised visitation order. Consequently, the trial court changed the visitation order to require supervised visitation.

In February 2021, DCF filed a petition for termination for parental rights under section 39.806(1)(e)1., Florida Statutes, and 39.806(1)(e)2., Florida Statutes. The court held a trial and heard testimony from the mother, the father, the mother's psychiatrist, the mother's individual therapist, the child's current caregiver, the mother's Family Resource Center Case Manager, the Guardian Ad Litem and others.

At trial, the father described how the mother is often not on medication and that while they resided together, he had to take care of her as she was unable to care for herself. The mother's psychiatrist indicated the mother consistently refused to take her medication because she believed it was not necessary. The Child Protective Investigator testified that the child's safety was endangered when the mother was not on her medication. The mother's case manager testified that when the mother is off her medication she is disoriented and lacks the ability to comprehend basic instructions. Further, the mother relayed to her case manager that she did not take her medication because she did not like the way it made her feel and was only currently taking it because of the case plan.

The mother's individual therapist testified the mother had not reached her treatment goal and continued to believe that she could cope without medication. The therapist indicated that remaining consistent with her medication is an issue they discuss in every session. The therapist further stated he believed the mother was only complying with her medication treatment plan to regain custody of her daughter. The paternal great grandmother also appeared at trial and described H.D. as "agitated" and "upset" whenever she had visitation with her parents. She went on to state that while H.D. usually falls asleep between 8:30 and 9:00 p.m. in her care,

after visitation with her parents H.D. will remain awake until midnight to 1:00 a.m. and her appetite is poor.

The consensus in testimony was that the child's safety is in danger when the mother is off her medication and the mother refused to be medically compliant. The mother's medical records indicate that when she is off her medication, she is subject to hallucinations, delusions and depression which result in a significant loss of functioning. Her treating therapist considered her a danger to herself and others when she is not medically compliant.

At the conclusion of the trial, the court entered final judgment terminating the mother's parental rights and made findings that H.D. is stable and bonded to her great grandmother, who has indicated a willingness to adopt H.D. This appeal followed.

## LEGAL ANALYSIS

"Appellate review of a termination of parental rights case is 'highly deferential. . . . a finding that evidence is clear and convincing enjoys a presumption of correctness and will not be overturned on appeal unless clearly erroneous or lacking in evidentiary support.'" Fla. Dep't of Child. & Families v. A.R., 253 So. 3d 1158, 1164 (Fla. 3d DCA 2018) (quoting C.G. v. Dep't of Child. & Families, 67 So. 3d 1141, 1143 (Fla. 3d DCA 2011))). "While a trial court's decision to terminate parental rights must be based on

clear and convincing evidence, our review is limited to whether competent substantial evidence supports the trial court's judgment." J.E. v. Dep't of Child. & Families, 126 So. 3d 424, 427 (Fla. 4th DCA 2013).

Section 39.806(1)(e)1. provides "[t]he failure of the parent or parents to substantially comply with the case plan for a period of 12 months after an adjudication of the child as a dependent child or the child's placement into shelter care, whichever occurs first, constitutes evidence of continuing abuse, neglect, or abandonment." Failure to substantially comply "means that the circumstances which gave rise to creation of the case plan have not been significantly remedied to the extent that the well-being and safety of the child will be endangered upon the child's remaining with or being returned to the parents." B.L. v. Dep't of Child. & Families, 950 So. 2d 1264, 1266 (Fla. 5th DCA 2007).

Here, the trial court heard extensive evidence that the mother was never in substantial compliance with the case plan within the twelve-month period after H.D. was adjudicated as a dependent. Based on the testimony adduced at trial, the trial court found by competent substantial evidence, the mother materially breached the case plan by refusing to take medication for her diagnosed schizoaffective disorder and is merely complying with portions of the case plan to regain custody of her daughter, rather than becoming

7

rehabilitated. The trial court also found by competent substantial evidence that when the mother refused to take her medication, she is hostile, confused, disoriented and lacks the ability to comprehend the most basic instructions, leaving her unable to safely care for her child. Such behavior constitutes grounds to terminate parental rights. See D.B. v. Dep't of Child. & Families, 87 So. 3d 1279, 1282 (Fla. 4th DCA 2012) (affirming the termination of a father's parental rights where competent substantial evidence showing the "Child would prospectively suffer abuse or neglect while in the care and control of the Father" because of his continued noncompliance with treatment for schizophrenia); C.B. v. Dep't of Child. & Families, 257 So. 3d 1078, 1082 (Fla. 4th DCA 2018) (finding a mother's parental rights were properly terminated "[b]ecause the mother did not complete the case plan tasks required to address mental health issues"); C.G. v. Dep't of Child. & Families, 67 So. 3d 1141, 1144 (Fla. 3d DCA 2011) (finding a mother's parental rights were properly terminated where she "failed to complete the assigned psychotherapy sessions, medication management program and the dyadic therapy" and this failure to comply, endangered her child).

Section 39.806(1)(e)2. provides termination of parental rights may occur where "[t]he parent or parents have materially breached the case plan

by their action or inaction."  "In order to prove the parent or parents have materially breached the case plan, the court must find by clear and convincing evidence that the parent or parents are unlikely or unable to substantially comply with the case plan before time to comply with the case plan expires."  § 39.806(1)(e)2., Fla. Stat.

"Time is of the essence for permanency of children in the dependency system."  Id.  This child was sheltered in August 2019 and has since been in the custody of her paternal great grandmother for over two years. Unfortunately, the mother refused or was unable to substantially comply with the case plan despite being given almost two years to do so.  We therefore find the trial court's findings are supported by competent substantial evidence.  While it is clear the mother loves her child and wants to retain parental rights, "[w]here the trial court's finding that there is clear and convincing evidence to terminate parental rights is supported by competent, substantial evidence, the appellate court has no choice but to affirm."  D.G. v. Dep't of Child. & Families, 77 So. 3d 201, 207 (Fla. 4th DCA 2011).

Affirmed.