# Third District Court of Appeal

## State of Florida

Opinion filed March 1, 2023.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D22-1822
Lower Tribunal No. 21-15503
_____

**S.M.O., the mother,**
Appellant,

vs.

**Department of Children and Families, et al.,**
Appellees.

An Appeal from the Circuit Court for Miami-Dade County, Scott M. Bernstein, Judge.

Eugene F. Zenobi, Criminal Conflict and Civil Regional Counsel, Third Region, and Kevin Coyle Colbert, Assistant Regional Counsel, for appellant.

Karla Perkins, for appellee Department of Children & Families; Sara Elizabeth Goldfarb, and Laura J. Lee (Tallahassee), for appellee Guardian ad Litem.

Before SCALES, LINDSEY, and BOKOR, JJ.

LINDSEY, J.

Appellant S.M.O. (the "Mother") appeals from a final order terminating parental rights to her four minor children based on her failure to protect her child D.G.C. from significant and persistent sexual abuse by her live-in boyfriend, A.A. Because there is competent substantial evidence supporting the trial court's findings that the Mother knowingly failed to prevent egregious conduct and because the trial court did not err in terminating the parental rights to D.G.C.'s younger siblings, we affirm.

I.  BACKGROUND

In October 2021, Appellee the Department of Children and Families (the "Department") took the Mother's four minor children into custody due to allegations of sexual abuse. The children were sheltered with other family members, and Appellee the Guardian ad Litem was appointed to represent the children's best interests. In November 2021, the Department filed the underlying Petition to terminate the Mother's parental rights to D.G.C. (a 15-year-old female child), A.M.A. (a six-year-old female child), A.M.A. (a four-year-old male child), and A.I.O.A. (a one-year-old male child). The Petition also sought to terminate A.A.'s parental rights. A.A. is D.G.C.'s stepfather and the legal father of the three younger children (collectively, the "Three Siblings"). As grounds for termination, the Petition alleged that the Mother had failed to protect D.G.C. from A.A.'s ongoing and prolonged sexual

2

abuse, which began when D.G.C. was nine years old and lasted at least six years.

The adjudicatory hearing was conducted over the course of four days. At the hearing, D.G.C. testified that A.A. started sexually abusing her when she was nine years old and that it happened "very often." Shortly after the abuse started, D.G.C. told the Mother that A.A. was touching her inappropriately "every day." Afterwards, the Mother had an argument with A.A., and the abuse stopped for 2-3 months before starting again. D.G.C. testified that the abuse was frequent and occurred mostly when her younger siblings were home. The abuse continued for at least six years until D.G.C. turned fifteen years old and moved out to live with her adult sister (the "Sister").

D.G.C.'s Sister testified that A.A. also abused her while she was a minor living with the Mother. According to the Sister, before A.A. moved in, he lived across the street. The Sister was 15 years old at the time and could tell A.A. "was up to no good" because of the way he would watch her and her siblings play outside. She told the Mother this, and the Mother dismissed it as nothing. After A.A. moved in, the Sister testified that he began sexually abusing her. She left the Mother a note about what was happening, and, according to the Sister, the Mother told her it was her fault because she was

3

looking for attention by the clothes she was wearing.  The Sister testified that the abuse "never stopped" and that every time she said something, the Mother told her it was her fault or did not believe her.

The Sister also described an incident that occurred when she was sixteen years old.  She fell asleep on the sofa with her baby sister and was woken up by the Mother's screams, brought on by the Mother catching A.A. in an attempted act of sexual abuse.  After the Sister ran into the bathroom with her baby sister, she heard "smashing, fighting, [and] arguing."  The next day, the Mother blamed the Sister for what happened.

The Mother testified that D.G.C. never told her about the abuse.  She also denied that the Sister told her about the abuse and likewise denied ever catching A.A. in an attempted sexual act with the Sister.  After hearing D.G.C. and the Sister describe in detail what A.A. had done to them, the Mother concluded they were lying.

Following the hearings, the trial court entered a final judgment terminating the Mother's and A.A.'s parental rights.  The court accepted D.G.C.'s and the Sister's testimony as credible.  The court also found "that

the Mother's testimony denying any knowledge of her daughters' sexual abuse not to be credible." The Mother timely appealed.[1]

## II.    ANALYSIS

The Mother raises four arguments on appeal. She argues the trial court erred in terminating her parental rights to D.G.C. because (1) termination was based on an unpled statutory ground and (2) there was no competent substantial evidence that she knowingly failed to prevent egregious conduct. The Mother further argues the trial court erred in terminating her parental rights to the Three Siblings because (3) there was no proof of a nexus between the Mother's egregious conduct to D.G.C. and the potential harm to the Three Siblings and (4) the court failed to make an individualized analysis of the statutory manifest best interest factors as applied to each of the Three Siblings. We address each argument in turn.

### 1. Unpled Statutory Ground (§ 39.806(1)(g))

"[B]efore terminating parental rights, 'the trial court must find that the Department established by clear and convincing evidence the following: (1) the existence of at least one statutory ground for terminating parental rights set forth in section 39.806(1); (2) termination is in the manifest best interest

---

[1] A.A. also appealed. His appeal has been dismissed for failure to prosecute. A.A. v. Dep't of Child. & Fams., 3D22-1820, 2023 WL 380409 (Fla. 3d DCA Jan. 5, 2023).

of the child; and (3) termination is the least restrictive means to protect the child from serious harm.'"[2] D.M. v. Dep't of Child. & Fams., 315 So. 3d 90, 93 (Fla. 3d DCA 2020) (quoting L.Q. v. Dep't of Child. & Fams., 282 So. 3d 958, 962 (Fla. 3d DCA 2019)). We review the trial court's findings under the highly deferential competent substantial evidence standard of review. See, e.g., C.G. v. Dep't of Child. & Fams., 67 So. 3d 1141, 1143 (Fla. 3d DCA 2011).

The trial court relied on two statutory grounds for terminating the Mother's rights: § 39.806(1)(f) and § 39.806(1)(g). Relevant here is subsection (g), which provides as follows:

> (g) The parent or parents have subjected the child or another child to aggravated child abuse as defined in s. 827.03, sexual battery or sexual abuse as defined in s. 39.01, or chronic abuse.

§ 39.806(1)(g), Fla. Stat. (2022).

---

[2] This case involves egregious conduct under § 39.805(1)(f). "[I]n cases involving egregious conduct by a parent, 'the termination of parental rights without the use of plans or agreements is the least restrictive means.'" In re C.E., 263 So. 3d 202, 213 (Fla. 2d DCA 2019) (quoting In re T.M., 641 So. 2d 410, 413 (Fla. 1994)). "As to the siblings, the legislature has abrogated the least restrictive means inquiry for 'egregious conduct' cases, among others." V.S. v. Dep't of Child. & Fams., 322 So. 3d 1153, 1163 (Fla. 4th DCA 2021). The Mother does not challenge the trial court's least restrictive means findings.

The Mother argues the trial court erred in relying on subsection (g) because the Department did not assert this statutory ground in its Petition.[3] We agree.[4] See L.A.G. v. Dep't of Child. & Fam. Servs., 963 So. 2d 725, 726 (Fla. 3d DCA 2007) ("The termination order violates due process because it is based on grounds not asserted in DCF's petition."). But because the existence of only one statutory ground is necessary, this does not amount to reversible error unless the trial court's reliance on subsection (f) was also erroneous. See § 39.806(1) ("Grounds for the termination of parental rights may be established under any of the following circumstances . . . ." (emphasis added)); cf. M.M.W. v. J.W., 47 Fla. L. Weekly D1633 (Fla. 3d DCA Aug. 3, 2022), reh'g denied (Oct. 7, 2022) ("[W]e conclude that terminating parental rights *solely* on a statutory ground not pled in the petition constitutes a denial of due process." (emphasis added)).

## 2. Egregious Conduct (§ 39.806(1)(f))

The only statutory ground the Department relied on against the Mother was § 39.806(1)(f), Florida Statutes (2022), which provides as follows:

> (f) The parent or parents engaged in egregious conduct or had the opportunity and capability to prevent and knowingly failed to prevent egregious

---

[3] The Department asserted subsection (g) against A.A. but not against the Mother.

[4] The Department commendably concedes error on this point.

7

conduct that threatens the life, safety, or physical, mental, or emotional health of the child or the child's sibling. Proof of a nexus between egregious conduct to a child and the potential harm to the child's sibling is not required.

Egregious conduct is defined as "abuse, abandonment, neglect, or any other conduct that is deplorable, flagrant, or outrageous by a normal standard of conduct. Egregious conduct may include an act or omission that occurred only once but was of such intensity, magnitude, or severity as to endanger the life of the child." § 39.806(1)(f)(2).

The Mother contends that competent substantial evidence does not support termination pursuant to subsection (f). We disagree. There was ample testimony below by both D.G.C. and the Sister, which the trial court explicitly found was credible, that the Mother knew about the sexual abuse. See I.D. v. Dep't of Child. & Fams., 13 So. 3d 1117, 1120 (Fla. 3d DCA 2009) ("[I]t is within the province of the trial court to weigh the evidence presented and to make credibility determinations."). This is sufficient to support the trial court's conclusion that "the Mother had the opportunity and capability to prevent and knowingly failed to prevent egregious conduct that threatens the life, safety, or physical, mental, or emotional health of [D.G.C.]." Therefore, because termination of the Mother's parental rights to D.G.C. is supported

by at least one statutory ground, we affirm the termination order as to D.G.C. We turn now to the remaining two issues involving the Three Siblings.

### 3. Proof of a Nexus of Harm (§ 39.806(1)(f))

Section 39.806(1)(f) permits termination of parental rights to siblings, even if there is no nexus between the egregious conduct and the potential harm to the siblings: "Proof of a nexus between egregious conduct to a child and the potential harm to the child's sibling is not required." This language was added in 2014. Even before the 2014 amendment, this Court held that "[s]ection 39.806(1)(f) provides a mechanism for protecting children from the threat of abuse [and] permits the trial court to terminate parental rights to a child who has suffered egregious abuse, ***and to any siblings of such child***." T.P. v. Dep't of Child. & Fam. Servs., 935 So. 2d 621, 624 (Fla. 3d DCA 2006). This Court further explained that "[t]he statute does not require additional proof to establish a likelihood that an abused child's sibling will also be abused. Furthermore, in some cases, a parent's conduct toward one child may demonstrate a 'substantial risk of significant harm' to another child." Id. at 625 (citing Dep't of Child. & Fams. v. B.B., 824 So. 2d 1000, 1007 (Fla. 5th DCA 2002)) (quoting Fla. Dept. of Child. & Fams. v. F.L., 880 So. 2d 602, 608 (Fla. 2004)).

9

The Mother argues that terminating her rights to the Three Siblings without proof of a nexus between her knowing failure to prevent egregious harm to D.G.C. and the potential harm to the Three Siblings violates her constitutional rights as a parent. Consequently, the Mother claims that § 39.806(1)(f) is unconstitutional.[5] We disagree.

It is firmly established that "[p]arents have a fundamental liberty interest, protected by both the Florida and federal constitutions, in determining the care and upbringing of their children." F.L., 880 So. 2d at 607. However, these rights are not absolute. T.P., 935 So. 2d at 624 ("Although parental rights are fundamental, we emphasize that they are not absolute, as they are subject to the overriding principle that the best interests of the children must prevail.").

Because a fundamental liberty interest is involved, we subject § 39.806(1)(f) to strict scrutiny. "To withstand strict scrutiny, a law must be necessary to promote a compelling governmental interest and must be narrowly tailored to advance that interest." N.B. v. Fla. Dep't of Child. &

---

[5] Below, the Mother only argued § 39.806(1)(f) was facially unconstitutional. Her as-applied challenge on appeal is therefore not preserved. See B.C. v. Dep't of Child. & Fams., 864 So. 2d 486, 491 (Fla. 5th DCA 2004) ("A distinction is drawn between challenges to the facial unconstitutionality of a statute and the unconstitutionality of the application of the statute to the facts of a particular case. The former may be raised for the first time on appeal; the latter must first have been raised at the trial level.").

10

Fams., 183 So. 3d 1186, 1188 (Fla. 3d DCA 2016) (quoting State v. J.P., 907 So. 2d 1101, 1109 (Fla. 2004)).  It is undisputed that the statute serves a compelling government interest by protecting children.

As for being narrowly tailored, we note that § 39.806(1) lists several grounds for termination of parental rights.  Subsection (f) is unlike many of the other statutory grounds in that it permits termination of parental rights to unharmed siblings.[6]  Importantly, subsection (f) narrowly applies in situations where there is "egregious conduct," which is clearly defined in the statute as "conduct that is deplorable, flagrant, or outrageous by a normal standard of conduct."  § 39.806(f)(2).  As this Court explained in T.P., "[s]ection 39.806(1)(f) 'represents a legislative expression that parents who have committed egregious acts of abuse against one child pose an unacceptable risk that they will abuse their remaining children.'"  935 So. 2d at 625 (quoting B.B., 824 So. 2d at 1007).

The Mother heavily relies on two Florida Supreme Court cases that do not involve egregious conduct under § 39.806(1)(f): Padgett and F.L.  We

---

[6] Section 39.806(1)(h), which has to do with "murder, manslaughter, aiding or abetting the murder, or conspiracy or solicitation to murder the other parent or another child, or a felony battery that resulted in serious bodily injury to the child or to another child" similarly does not require proof of a nexus between the conduct and potential harm to another child.

11

agree with the Fourth District that these cases do not undermine the constitutionality of § 39.806(1)(f):

> Neither opinion dealt with section 39.806(1)(f) as amended in 2014, nor with a "no nexus required" provision inserted by the legislature. Moreover, <u>Padgett</u> states that "the permanent termination of a parent's rights in one child under circumstances involving abuse or neglect may serve as grounds for permanently severing the parent's rights in a different child." 577 So. 2d at 571 (emphasis added and footnote omitted). <u>F.L.</u> buttresses this point: "Implicit in our decision in Padgett is the recognition that in some cases, but not in all cases, a parent's conduct toward another child may demonstrate a substantial risk of significant harm to the current child." 880 So. 2d at 608 (emphasis added). "Egregious conduct" would appear to fall into the narrow "some cases" category. Thus, the "no nexus required" amendment is not incompatible with <u>Padgett</u> and <u>F.L.</u> or with the "narrowly tailored" prerequisite.

<u>V.S. v. Dep't of Child. & Fams.</u>, 322 So. 3d 1153, 1161–62 (Fla. 4th DCA 2021).[7]

We therefore conclude that § 39.806(1)(f) survives strict scrutiny because it promotes the compelling government interest of protecting

---

[7] The Fourth District has certified the constitutionality of § 39.806(1)(f) as a question of great public importance at least four times. <u>See</u> <u>V.S. v. Dep't of Child. & Fams.</u>, 322 So. 3d 1229 (Fla. 4th DCA 2021); <u>R.S. v. Dep't of Child. & Fams.</u>, 328 So. 3d 305 (Fla. 4th DCA 2021); <u>K.A. v. Dep't of Child. & Fams.</u>, 332 So. 3d 501 (Fla. 4th DCA 2021); <u>E.A. v. Dep't of Child. & Fams.</u>, 332 So. 3d 493 (Fla. 4th DCA 2021). So far, the Florida Supreme Court has declined review.

children and it narrowly applies in situations where there is egregious conduct.

### 4. Manifest Best Interests of the Three Siblings (§ 39.810)

Although proof of a nexus between egregious conduct and potential harm to a sibling is not required for termination under section 39.806(1)(f), the trial court must still engage in a manifest best interests inquiry pursuant to § 39.810. "The 'manifest best interests' inquiry ensures the continuation of an individualized approach and the consideration of all relevant circumstances with respect to sibling terminations, even in circumstances in which the trial court has determined that the parent '[e]ngaged in egregious conduct . . . that threatens the life, safety, or physical, mental, or emotional health of the child or the child's sibling.'" V.S., 322 So. 3d at 1160 (quoting § 39.806(1)(f), Fla. Stat. (2020)).

The Mother, relying on V.S., argues the trial court failed to make an individualized analysis of the eleven factors in § 39.810 as to each of the Three Siblings. In V.S., the trial court sufficiently addressed the factors as to the abused child but failed to evaluate the factors as to the siblings "stating that proof of a nexus between the conduct against [the abused child] and the potential harm to his siblings was not required." 322 So. 3d at 1163. The Department likewise failed to offer proof of the factors listed in § 39.810

13

"apparently taking the same position as the trial court that proof of substantial risk of significant harm to the siblings was unnecessary. <u>Id.</u>

Here, by contrast, the trial court made detailed findings as to each of the eleven factors in § 39.810. While it is true that some of the trial court's findings refer to the Three Siblings collectively, this is not reversible error because their interests were aligned. For example, the first factor looks at whether there is "[a]ny suitable permanent custody arrangement with a relative of the child." Here, all Three Siblings were living with their paternal grandmother.

Importantly, proof of the factors in § 39.810 was presented below and support the trial court's findings. The Mother does not challenge any of these findings as unsupported. "Here the trial court made full findings on all eleven factors and found that overall, termination of the mother's parental rights was in the child's manifest best interest. The findings were sufficient for appellate review, and there was evidence to support the findings. Reweighing the evidence at the appellate level would violate the highly deferential standard we must apply." <u>J.P. v. Fla. Dept. of Child. & Fams.</u>, 183 So. 3d 1198, 1204 (Fla. 1st DCA 2016).

III.    CONCLUSION

Although the trial court erred when it terminated the Mother's parental rights based on § 39.806(1)(g), a statutory ground that was never pled, we nevertheless affirm the termination order because there is competent substantial evidence supporting termination of the Mother's parental rights to D.G.C. under § 39.806(1)(f). We also conclude that § 39.806(1)(f) is constitutional and that the trial court did not err in terminating the Mother's parental rights to the Three Siblings.

Affirmed.